JANUARY TERM, 1883, No. 68.                DECEMBER 6, 1882.

## The Pennsylvania Company *v.* Allen.

1. The Court has a right to express its opinion upon the facts, provided they are still submitted to the jury.

2. Where, therefore, the Court submitted the facts to the jury, but said "they would probably be considered by a jury as being careless," it was held not to be error.

3. The fact that the plaintiff, at the time she suffered the injuries for which suit was brought, was picking up coals in a street not fully opened and occupied for public travel, but which had been actually improved and used to some extent, will not prevent her recovery against a railroad company for negligence.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

[The Pennsylvania Company v. Allen.]

Error to the Court of Common Pleas of *Erie County*.

Case by Ruth Ann Allen against the Pennsylvania Company to recover damages for personal injuries alleged to have been caused by the negligence of the employés of the defendant.

Upon the trial before GALBRAITH, P. J., the plaintiff testified, in substance, *inter alia*, as follows :

On the morning of the 25th of April, 1877, I went down to the water-works, picking up a little cinders. I wasn't there very long when some one hallooed to me. The cinder pile is on Chestnut street on the south side of the railroad track. To the best of my knowledge, I was six or seven feet from the railroad track when I was on that pile of cinders. I looked in every shape, back and forward, and there was no cars coming. I got on my knees, and was picking up the cinders, and it was a very cold morning, and some one hallooed at me, and at that I got up and the cinder pile slipped under me. I got frightened. I didn't know anything until the cars ran over me. My leg had to be amputated. I did not hear any signals of the approach of the train. There was no whistle blew, and they rung no bell. I can give my oath to that. I didn't hear it ; if I did, I would have got out of the road.

Upon cross-examination, she said :

I was on my knees, and I got up immediately, and I got frightened, and I fell off from the cinder pile ; I fell right down.

*Joseph Maginnis* testified for the plaintiff, *inter alia*, in substance, as follows :

I was at the ice-house about two squares west of the water-works. This train passed me, going east. It consisted of loaded coal cars. The train was backing. According to my judgment, I think it was making over ten miles an hour. I didn't see any signals nor hear any.

Upon cross-examination he said :

There was a street opened down through there. I suppose it was simply opened down to the water-works to get in with their teams, but they went to the north side of the water-works and hauled their coal over. They were hauling their coal to the water-works across the track. There is no street opened along there. There is a road to the ice-house. There is no street along the bluff of the lake. Along in front of Chestnut street there is the water-works docks.

Upon re-direct examination he said :

Chestnut street is used as a thoroughfare for people

going down to go out on the bay with boats. I have seen that place with fifty people on it at a time.

*John Lanigan*, for the plaintiff, testified in substance, *inter alia:*

I saw the train coming. I didn't see any signals given at that crossing. I heard the whistle blowing at the culvert above the ice-house. I couldn't swear whether at the ice-house or a little above it. The curve where they blow the whistle is about two blocks above the waterworks. They blew the whistle generally when they came to the curve. After that there was no signal given. If there had been any other signal given I should have heard it. They were running, I think, twelve or thirteen miles an hour, to the best of my knowledge. They were backing down. I think Chestnut street is a thoroughfare for people crossing the track there to go to and from the bay, where teams are going to haul coal and wood, &c. There is a good many people crossing that track.

There was other corroborating testimony for the plaintiff.

Counsel for the plaintiff offered in evidence the charter of the city of Erie, showing that all of the streets were public highways, and an ordinance of the city forbidding trains to be run within its limits at a greater rate of speed than six miles an hour.

It was admitted that there was no flagman at the place where the track crossed Chestnut street.

*W. W. Reed*, for the defendant, testified in substance, *inter alia:*

I was water commissioner for twelve years, from the commencement of the works to May, 1879. Chestnut street was graded by the water commissioners from Second street—not quite up as far as Second street. When the works were commenced Chestnut street was not opened from Second north. The water commissioners, during the time of building the works, graded the whole down, to enable them to haul machinery and coal down. It was graded down nearly opposite to the south side of the engine-house, and from there north there was a hill some eight or ten feet high in the street. The water commissioners paid for it. There was no public crossing there while I was commissioner up to 1879.

The engineer of the train testified that it was going at the rate of about eight or ten miles an hour, that the whistle was blown at the ice-house, that no other signal was given, that they were backing down, and that he had no orders to make a signal at the Chestnut street crossing.

[The Pennsylvania Company *v.* Allen.]

The defendant submitted, *inter alia*, the following points :

2. Even though a street be ordained by the proper authorities, it is not a street until opened and occupied for public travel, and the public generally would have no right to use the same until so opened.

*Answer.*—This is refused. The street in question is an original street of the town, now city, of Erie, and the evidence shows that it had been improved and used in connection with the city water-works, and that it was open at least in part and traveled by persons and teams at the point in question.

3. From all the evidence in this case, the plaintiff is not entitled to recover.

*Answer.*—This is a request to take the case from the jury ; but, as already stated in the general charge, under the view we take of the evidence, the jury must pass upon the questions of fact involved, and say under all the evidence and with the law governing such cases, whether the plaintiff is entitled to recover.

The Court charged, *inter alia*, as follows :

" Now, in the first place, was there negligence on the part of the railroad company ? We have already instructed you that this was a public street ; the railroad company had a right to cross it, but they were bound to exercise due care and prudence in crossing the street, in order that no injury might occur, and the jury may find that to cross a public street, even although not traveled to a great extent, that to cross that street with cars reversed, with the train reversed and the engine in the rear, without precautions taken by ringing the bell, or some person stationed on the rear car in order to give notice to persons, might be negligence. Do they find that to be so, especially if the train was coming, as testified to here, from eight to thirteen miles an hour ? One of the witnesses for the defendant said eight to ten, and ten to thirteen was the evidence on part of the plaintiff. [Now, in a town or city, or wherever there are persons to cross the track, a train coming along with the signal not having been given short of a quarter of a mile distant, and no person on the rear car to notify persons who may be on the track, would probably be considered by a jury as being careless.] It is said, and that would appear to be the evidence, that the whistle was sounded where this train came in sight, a quarter of a mile away, but not after that, and it does not appear that any bell was rung ; the jury might find that there was carelessness in the management of the train ;

but if you find that there was also carelessness on the part of Mrs. Allen—a woman of her age—in going so close to the track upon this uncertain foundation upon which she was—the pile of cinders—and that in consequence of her carelessness and negligence in taking the helpless position she did, and her heedlessness in paying no attention to any signal that was given by the railroad, she suddenly starting up and meeting with this injury, and that her carelessness contributed to this injury, she would not be entitled to recover in a legal point of view. This is entirely for you, and you are to take this case without any prejudice against the defendants on account of their being a corporation. The counsel who has so ably argued the case on the part of the plaintiff does not appeal to any such feeling as that, and has very properly avoided any great appeal to your sympathies. You will leave out of view any prejudice, either for this plaintiff or against this corporation. All parties stand equally before the law, and you will decide the case upon the evidence as it appears to you.

In the first place, was there negligence on the part of the railroad company in the management of this train? If you find that there was not, that is the end of the case. If you find that there was negligence in the management of the train, then you will take up the next question: Was there any negligence on the part of the plaintiff— any contributory negligence on her part by which this accident occurred, or was there, from the absence of prudence on her part, the occurrence of this accident? In that case, no matter if you find there was negligence on the part of the defendant, she cannot recover.

If you find that the accident resulted to her, she exercising ordinary prudence and care, and resulted from the negligence of the railroad company's employés, without any fault of hers, she is entitled to recover; and if you find for the plaintiff, you will allow her what her loss would be—taking her age into consideration and her ability to earn. She said she earned her living by washing; of course her earnings would be small, and the years she has to live would probably not be very many, she being an old woman; and you will take that all into consideration and allow her for that whatever you think would compensate her in damages for the loss of her earning power if you find for the plaintiff, and then add such sum as you think will compensate her for the pain and suffering she has endured from this injury, or what she is still likely to undergo from the hurt."

[The Pennsylvania Company v. Allen.]

October 5, 1882. Verdict for the plaintiff for $700, on which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the answers to its points, as above, and that part of the charge within brackets.

*J. Ross Thompson* for plaintiff in error.

The conclusions to be drawn from the evidence are for the jury. It is not for the court to intimate the probable effect of the evidence. Here the Court states certain facts, and says that they "would probably be considered by a jury as being careless." This is error.

The second point should have been affirmed. A street may be a street on paper or on a map, and yet not a street dedicated to public use. It makes no matter whether it was one of the original streets of the town as laid out. It was never opened for public travel. The city had never expended one dollar in opening it—never had enacted an ordinance to that effect.

*Benson & Brainerd* and *Clark Olds*, for defendant in error.

It is a well-settled principle of law that where a person is legitimately upon a railroad track or highway and becomes suddenly frightened through the unexpected or irregular course of a train, which is negligently driven, and unwisely runs into instead of out of danger, he is not liable for the consequence, for it was the defendant's negligence that put the plaintiff in the perilous position. Pa. R.R. *v.* Werner, 8 Norris, 59.

The testimony of the engineer in charge of the train "that they had no orders to make a signal at this crossing, and did not make any," is sufficient to fasten negligence upon the company.

The fact that the Court used the words "would probably be considered by a jury as being careless" in commenting upon one of the minor facts of the case would not be sufficient grounds for reversal. It was not a binding instruction upon the jury, and they were not, and could not have been, misled by it: Phelin *v.* Kenderdine, 8 Harris, 354; Greeley *v.* Thomas, 6 P. F. Smith, 35.

December 30th, 1882.—Per Curiam: The right of the Court to express its opinion upon the facts, provided they are still submitted to the jury, is no longer an open question. There was evidence that the street had been actually improved and used, to what extent was imma-

terial. There was no error, therefore, in refusing to take the case from the jury.

Judgment affirmed.