## Fredericks, Appellant, v. Northern Central R. R.

[Marked to be reported.]

*Negligence—Railroads—Passengers—Presumption—Evidence.*

The rule that a carrier of passengers is bound to exercise the highest degree of care that is possible to human foresight and prudence, does not require a construction that will make the carrier an insurer against accidents; nor the prevention of accidents by the employment of means which, if the accident could have been foretold, might have been used to prevent it, nor for the wrongful acts of strangers, unless the carrier was remiss in not discovering them in time to avert the injury; nor for an impracticable character or extent of precaution which could not be observed without so ruinous a cost as to destroy the business; and in all cases the liability is only such as results from negligence.

A passenger was injured by a collision of the train in which he was riding with two loaded coal cars. On the morning of the day of the accident, the coal cars had been left on a side track at a distance of about two miles from the place of collision. The cars were properly braked, and a throw-off switch, which would have derailed the cars if left undisturbed, was left open so as to throw the cars from the track if they were moved. The cars remained in this condition during the day. Late in the afternoon a boy got upon the cars, loosed the brake by hammering it with a coupling pin, and closed the throw-off switch. The cars ran down the siding on to the main line, and collided with the train on which plaintiff was riding. It appeared from the evidence that there was another throw-off switch nearer the main line, but that this had not been opened by defendant. It also appeared that there were no locks on either switch. *Held*, that the evidence was sufficient to rebut the presumption of negligence on the part of the railroad company, and that a verdict for the company should be sustained.

*Charge of court—Expression of opinion.*

A trial judge may express his opinion freely on the weight and value of evidence, and when he does so without misleading or controlling the jury in the disposition of the facts, there is no ground for reversal.

A trial judge charged as follows: "Under the law applicable to this case I must submit the question to you to determine whether you find the defendant was careless in not opening the lower switch or putting on locks. Personally, if I were a juror, I would say no. If I were a juryman, I would think that the company had done all that any prudent man would do; it braked its cars, opened the throw-off switch and left them there. But the question must be submitted to you as jurors. . . . There is another part of the case which is brought out with great strength under the evidence, and proved, I think to your satisfaction, as at least it is to mine, that this accident was caused by the willful misconduct of certain boys; that those boys meddled with those cars and that switch, and that

it was their willful misdoing that caused the accident. I leave it to you to say whether you think under those circumstances a company ought to be held responsible for the malicious, willful misconduct of boys. My own individual opinion in that case is that they ought not, but as I am bound to leave that question to you, I do leave it to you to determine." *Held*, that the charge was not improper.

Argued March 31, 1893. Appeal, No. 280, Jan. T., 1893, by plaintiff, Joseph A. Fredericks, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1889, No. 305, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for personal injuries. Before ARNOLD, J.

At the trial, it appeared that on July 17, 1889, plaintiff was a passenger on defendant's train from Hickory Swamp Colliery to Shamokin. When near Shamokin two loaded coal cars that had run away from a siding and come out on to the main track dashed into the passenger train. It appeared that the coal cars had been left on the side track at a distance of about two miles from the place of collision, about ten o'clock in the morning. Between the place where the cars were left standing and the main line there were two throw-off switches. The upper switch was left open, but the lower switch was closed. Neither of the switches was provided with locks. The cars were properly braked, and remained in this condition during the day. Late in the afternoon a boy got upon the cars, loosed the brakes by hammering them with a coupling pin, and closed the throw-off switch. The cars then ran down the siding on to the main line, and caused the accident in which plaintiff was injured.

The court charged as follows:

"It appears that on July 17th, 1889, the plaintiff was a passenger on a train of that railroad company in Northumberland county, when a collision took place, and, in the effort which he was making to escape before the collision took place, it seems that he was hurt, from the effects of which he has suffered bodily pain and injury. He charges that the injuries which he received were caused by the negligence of the defendant company.

"Negligence is the same as carelessness. It means the failure to do that which should have been done or leaving undone something which should have been done. In order therefore

to justify you in finding a verdict for the plaintiff you will have to find that the injuries were caused by the negligence or carelessness of the defendants, because if there is no such carelessness or negligence shown, then the company is not responsible. The company is not responsible simply because a passenger or other person gets hurt. It is responsible only when an injury is caused by its neglect, and you are to find in this case, if you can from the testimony, that the company was negligent or careless.

" Where a passenger is riding in the proper place in a train and is hurt by a collision, as in this case, there is a presumption of negligence or carelessness against the company, which presumption the company must remove by showing that it was not careless, and that the accident or collision, or whatever caused the injury, is not attributable to it, the company.

The defendant alleges that this accident was caused not by any carelessness of it or its employees, but by the deliberate, malicious, and criminal act of certain boys. It appears that the plaintiff was in a passenger train going along the road of the company; there was a branch road belonging to the Philadelphia and Reading Railroad Company, which was jointly used by it and the Northern Central Railway Company, and that this defendant, the Northern Central Railway Company, on the morning of the accident side-tracked a draught of cars on this branch or siding some two miles from the place of the accident; that the place where these cars were left was on a declining grade, that is, declining towards the main line of the road. It has been testified here and not contradicted, but it is for you to say, however, whether you believe the testimony of the witnesses, that they braked that train of coal cars. I believe two or three witnesses swore that the first car was braked on both ends, the next car was braked on one end, and one witness this morning testified that he braked the empty cars. It is manifest from the sequel that the empty cars were braked, because they remained on the track, while the loaded cars were the runaways which caused the injuries. It has also been testified by several witnesses, those who did the act and others who saw it after it was done, that a certain throw-off switch was left open, so that, if by any means this train could have got loose from its moorings, it could not have been run down to the main track

but would have been thrown off and ditched. It has also been testified by certain witnesses that they saw boys loosen those cars, saw them take off the brake, start the cars, and shut the throw-off switch. From which it sufficiently appears, and is not contradicted, and the. counsel were candid enough to admit that they believed it was true, that this accident was caused by the boys loosening the car brakes and closing up the throw-off switch.

" The question left open is whether this company was negligent in any respect in regard to its manner of leaving those cars there that day and fastening them.

" It appears that there was another switch down near the main track some fifteen hundred or two thousand feet, which can be used as a throw-off switch, and it was argued that if that switch had been left open the cars would have been ditched there and there would have been no accident. It was also argued to you that inasmuch as the company had no lock upon this switch, they therefore ought to be held for that reason.

" [Under the law applicable to this case I must submit the question to you to determine whether you find the defendant was careless in not opening the lower switch or not putting on locks. Personally, if I were a juror, I would say no. If I were a juryman I would think that the company had done all that any prudent man would do ; it braked its cars, opened the throw-off switch and left them there. But the question must be submitted to you as jurors to say whether you find it was carlessness on the part of the defendant to leave those cars there on a decline on which the cars would have run into the main road in case they had got loose.] [1] That is one of the questions to be left to you for the purpose of finding, if you can, whether this company was in fault in so leaving the cars.

" [There is another part of the case, which is brought out with great strength under the evidence, and proved, I think, to your satisfaction, as at least it is to mine, that this accident was caused by the willful misconduct of certain boys ; that those boys meddled with those cars and that switch, and that it was their willful misdoing that caused the accident. I leave it to you to say whether you think under those circumstances a company ought to be held responsible for the malicious, willful misconduct of bad boys. My own individual opinion in that

case is that they ought not, but as I am bound to leave that question to you, I do leave it to you to determine.] [1]

" If you find that this company was at fault in any respect and is responsible for this injury, then, of course, you will find in favor of the plaintiff and proceed to assess the damages. You are not to find in favor of the plaintiff and against the company simply because the plaintiff was hurt. That is no proof of carelessness. Many a man is hurt accidentally ; he hurts himself sometimes ; he is hurt by cars ; hurt by omnibuses and by wagons when it is a pure accident. Sometimes people are hurt by willful misconduct of third persons, and yet the company is not responsible, just as you have been told in the case of throwing stones into the car. The mere fact that a man has been badly hurt, as undoubtedly this plaintiff was, is not sufficient to entitle him to recover from the company. [It is essential that it should be proven to you that his injuries were caused by the neglect or carelessness of the company defendant. I leave it to you, not without some hesitation, to say in this case whether you find any such evidence of negligence.] [1]

After charging as to measure of damages, if the verdict was for plaintiff, the court continued : .

" On the other hand, if your verdict is in favor of the defendant, all you have to say is, verdict for the defendant. It is a question for you to settle on the evidence, and I submit it to you as good, true, and lawful men of the country, in the hope that you will be able to come to some result which will be according to the evidence, and which will be just and fair to both sides."

Plaintiff's points were among others as follows :

" 4. If the jury believe that the defendant company placed loaded cars on a switch which had an inclination towards the main track, and secured them simply by brakes and an unlocked throw-off switch, such cars cannot be considered as secured with that degree of care, skill, and prudence which the law requires to be exercised in such matters. *Answer :* I refuse that point, and leave it to the jury as in the general charge." [2]

" 5. There is no legal principle that would justify a railroad company in leaving loaded cars in such a situation that they could be caused to run on to its main track in the way of its

passing trains by the carelessness of persons passing by, or by the mischievous acts of children." Refused. [3]

Defendant's points were among others as follows:

"1. The presumption of negligence on the part of a carrier of passengers which arises from the happening of an injurious accident may be effectually rebutted by proof that the accident was produced by a cause external to the carrier and beyond his control. In the present case there is evidence that the cause of the accident was external to the carrier and beyond his control; and if the jury believe that evidence their verdict should be for the defendant." Affirmed. [4]

"2. The uncontradicted testimony on the part of the defendant shows that the proximate cause of the collision in which the plaintiff was injured was the wrongful act of trespassers upon the defendant's cars. For such wrongful act the company defendant, under the circumstances of the present case, is not responsible; and if the jury believe the said testimony as to the proximate cause of the collision, their verdict should be for the defendant." Affirmed. [5]

"5. Under the evidence in the present case neither the absence of a lock from the throw-off switch in the immediate vicinity of the coal cars, nor the failure to open the double-rail switch, used as a throw-off, near the Corbin Colliery, can be regarded as any proof of negligence on the part of the defendant. *Answer :* I have said to you my own belief is that is true, but it is a matter of fact, and as a question of fact must be submitted to you. I refuse that point." [6]

After some deliberation the jury came into court and asked "If the law required railroad companies to have locks for their switches," to which the court replied: "The law does not require companies to have locks on their switches, but the want of locks was a matter which the jury have a right to consider in determining whether the company was negligent, remembering that in case of trespassers perhaps locks would have afforded no greater protection than throw-off switches and brakes." [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7) instructions, quoting them.

*Josiah R. Adams, Samuel B. Huey* with him, for appellant.

—As to passengers, railway companies contract to carry them safely, and "the slightest degree of neglect against which human foresight and prudence may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages: Laing v. Colder, 8 Pa. 482; Sullivan v. R. R., 30 Pa. 234; Anderson v. R. R., 94 Pa. 358; McKinney v. R. R., 124 Pa. 471; Daugherty v. R. R., 11 W. N. 437; R. R. v. Smith, 18 A. & E. R. R. Cas. 399; Nicholson v. R. R., 41 N. Y. 525.

In a locality commonly infested with mischievous boys or other trespassers, the same rule should apply. The defendants had notice that this locality was infested by boys, because it was in the neighborhood of miners' houses.

On the two cars that ran away but three of the four brakes were set. The fact that any one so desiring could have opened the brakes does not relieve the defendant from taking the extraordinary care of having them all set. The company was in duty bound to make it as difficult for any one to start the cars as extraordinary care could make it. Had all the brakes been set, perhaps one trying to start them might have been seen and stopped; in any event, the defendant did not exercise extraordinary care. Extraordinary care would have prompted the putting off blocks under the wheels.

Extraordinary care with reference to the switch certainly included something more than merely leaving it open. Had the track been perfectly level the switch ought to have been opened, to protect the main line from the danger of cars left there being pushed or bumped upon it by engines or moving cars in the rear. Extraordinary care with reference to the switch could not stop short of a lock. The cars were left close to a cluster of miners' houses.

The very presence of the throw-off switch proves that the danger from runaway cars, however set in motion, was a constant apparent danger, known and recognized by defendant.

Defendant cannot be deemed to have exercised the extraordinary care required by law, even had it taken the utmost precaution against the starting of the runaway cars. It must exercise extraordinary care in the endeavor to stop or to derail them. In that duty with the means of effectually derailing them at hand in the lower throw-off switch the defendant admittedly failed.

The general charge will be searched in vain for any elucidation of the degree of care demanded by the law, and nothing in it would lead the jury to consider anything but ordinary care.

The learned judge especially erred in affirming defendant's second point. If the law is as therein stated, there can be no question of proximate or remote cause here. There can be no cause connected with the management of defendant's cars, rails, brakes, or switches so remote that the law requiring extraordinary care does not apply.

The charge was partial and controlling on the minds of the jury: Reichenbach v. Ruddach, 127 Pa. 565; Pa. Co. v. Harris, 101 Pa. 80; Burke v. Maxwell, 81 Pa. 139; Herstine v. R. R., 151 Pa. 244.

*George Tucker Bispham,* for appellee.—The mere happening of an injurious accident, if it arises from something connected with the means of transportation, or from something over which the railroad company has control, makes out a prima facie case, but not otherwise: Thomas v. P. R. R., 148 Pa. 180; P. R. R. v. MacKinney, 124 Pa. 462.

The court was not bound as matter of law to instruct the jury that under the evidence defendant was negligent, because, in the judgment of the court, it did not exercise the highest possible degree of care. That would be in effect laying down the rule that the court and not the jury is to be the judge of the question whether defendant had or had not done its whole duty to the passenger.

Laing v. Colder, 8 Pa. 482, simply laid down the general proposition that the railroad must exercise extraordinary care. In that case the question was left to the jury and the jury found for the defendant, as they did here.

In Sullivan v. P. R R., 30 Pa. 234, the court below was reversed because the case was not left to the jury. It is no authority in support of the proposition that the court ought to have declared, as a matter of law, that defendant was negligent. On the contrary, this court expressly say that the questions were for the jury.

In P. & R. R. R. v. Anderson, 94 Pa. 351, the court left the case to the jury under proper instructions, and the ruling was affirmed by this court.

Defendant was entitled to an instruction that if the jury believed the evidence on part of defendant as to the proximate cause of the accident, there could be no recovery.

A railroad company is not bound to anticipate and take precautions against trespasses by third parties : P. R. R. v. Mac-Kinney, 124 Pa. 462.

Daugherty v. R. R., 11 W. N. 437, relied upon by the other side, does not lay down any contrary doctrine.   Anything that is therein said looking the other way is a mere dictum, because there was no affirmative evidence there, as there was here, that the switch was misplaced by a trespasser.

But it is urged by appellant that this very question was decided against the view of the law contended for by the appellee in R. R. v. Smith, 18 A. & E. R. R. Cases, 399.   But it appeared in that case that a collision took place between the passenger car in which plaintiff was sitting and a car loaded with stone, which stood upon a siding in immediate proximity to the track on which the passenger car was running.   It also appeared that the stone car might have been started from its position by mere carelessness, by the mere accident of knocking away the railroad tie which had been placed against the wheels to keep it in position.

The presumption of law is that crime will not be committed, and that persons will act with ordinary prudence : Daniel v. Metropolitan Ry., L. R. 5 Eng. & Ir. Ap. 61.

In Latch v. Rumner Ry., 3 H. & N. 930, it was held that although the derailment of a train was prima facie evidence of negligence, yet it was entirely rebutted by proof that the derailment was caused by the act of a stranger.

In Ebright v. Mineral R. R. & Mining Co., 3 Pa. S. C. Dig. 281 (s. c., 2 Mona. 126), defendant, a railroad company, was held not liable for a collision which took place in consequence of the brakes of the cars having been removed by a trespasser. See also Worth v. C. M. & St. P. R. R., 51 Fed. R. 171.

The evidence in the present case showed that there was an efficient intervening agency between the acts alleged as negligence upon the part of defendant and the happening of the accident, and under the decisions of this court it is submitted that this reduced any alleged negligence on the part of defendant from a proximate to a remote cause, and relieves it from

liability therefor: Schaeffer v. Jackson Township, 150 Pa. 151; Herr v. City of Lebanon, 149 Pa. 222; Passenger Ry. v. Trich, 117 Pa. 390.

OPINION BY MR. JUSTICE GREEN, October 2, 1893:

There is not the least question as to how the collision occurred which resulted in the plaintiff's injury. Two loaded coal cars which had been standing on a side track, at a distance of almost two miles from the place of collision, were detached from a number of other cars to which they were coupled, a throw-off switch, which would have derailed the cars if left undisturbed was closed so as to lead the cars on the side track down a moderate grade until it joined the main track. There the cars collided with a miner's train on which the plaintiff was riding as a passenger and killed two persons and injured others, among whom was the plaintiff. The coal cars which had attained a very high speed ran into the miner's train from behind and drove the forward car, on which the plaintiff was riding, into the tender and engine. The plaintiff was a passenger and was injured without any fault of his own. As the injury was inflicted by a collision of other cars and on the track of the defendant company, he was entitled to, and received, the benefit of the legal presumption that the injury was the consequence of the defendant's negligence, which presumption it was the defendant's duty to rebut or suffer a recovery of damages by the plaintiff. The only substantial question in the case was whether the presumption of negligence was rebutted by the evidence. That question was left to the jury by the learned court below, and the jury found that it was, by returning a verdict in favor of the defendant. It is difficult to see how any other verdict could have been returned consistently with the testimony. The evidence, which was entirely uncontradicted, showed that a small train, consisting of four loaded, and six or seven empty coal cars, was taken up the Northern Central track over on the side track, which belonged to the Philadelphia & Reading R. R. Co., but was used by the defendant, at about half past ten o'clock in the morning. The engine was detached from the train and the cars were left standing on the side track and remained there during the day. The loaded cars were in front. There was a throw-off switch on the track upon which the cars were left standing, a short distance below the cars.

The conductor, Linderman, was asked : " Q. Tell the jury what you did with the draught of cars when you got up there ; whether any of the brakes were put on, and whether anything was done to the shut-off switch. Tell us first about the brakes. A. The brakes were put on by the men, and I threw the throw-off switch back personally myself when the engine run back over it.  Q. You left the cars standing there, did you ?  A. Yes, sir.  Q. You went back with the engine ?  A. Yes, sir.  Q. Of course the throw-off switch was closed when the engine went over it ?  A. Yes, sir.  Q. After the engine passed over it who threw the throw-off switch ?  A. I did."

The fireman of the train, Joseph A. Eadie, having testified that he was on the train and that they took the cars to the point stated by Linderman, above the throw-off switch, was asked : " Q. After you got the draught of cars up there did you do anything to the brakes ?  A. I set three brakes.  Q. On what cars ?  A. On the first and second, two on the first and one on the second car.  Q. Were those the cars that were nearest to the locomotive ?  A. Yes, sir.  Q. Those were the two loaded cars, were they ?  A. They were.  Q. Were the cars coupled together?  A. Yes, sir.  Q. Were they left coupled ?  A. They were.  Q. The entire draught was left coupled ?  A. They were all left coupled that we took up there. . . . Q. Did you leave on the locomotive with the engineer and conductor ?  A. I did.  Q. And the rest of the crew?  A. Yes, sir.  Q. You left the cars standing there ?  A. Yes, sir.  Q. What was done to the throw-off switch?  A. The conductor threw the throw-off switch back.  Q. Was that before or after the locomotive had passed over it.  A. After it passed over it.  Q. After it was thrown the switch was open ?  A. It was.  Q. If the cars had started to run down in that position they would have been thrown into the meadow by the miners' houses, would they not?  A. Yes, sir."

W. L. Eadie, a brakeman, having testified that he was on the cars as brakeman, that the cars were left standing on the track above the throw-off switch, and that he went back on the engine with the others, was asked : " Q. After the engine had passed this throw-off switch, did you notice the conductor do anything?  A. Yes, sir, he threw the throw-off switch open. Q. You were with him when he did that, were you ?  A. Yes,

sir; him and I were on the pilot together after he did it. Q. The switch was open when you left? A. Yes, sir."

The testimony of the foregoing witnesses proves that the two cars that escaped were duly braked, by setting both brakes on the front one, and one brake on the rear one, and also that the throw-off switch below the cars was thrown open and that if left in that condition, the cars, if started, could not run on the track but would be thrown off in the meadow. Other brakes were set on the other cars, but it is not necessary to recur to that testimony, because their sufficiency to hold the cars was conclusively established by the fact that they did hold them. They did not leave but remained standing where they were placed after the two loaded cars had been detached and left.

The question whether the precautions taken by the defendant's men were sufficient to hold the cars in place, was fully illustrated by the testimony of F. W. Monier, who was shipping clerk of the Excelsior colliery which was farther up the track and above the cars. He testified that he saw the cars in the morning and again in the afternoon. He was asked: "Q. When did you examine the throw-off switch? A. In the afternoon about half past four or five o'clock. Q. That was before the cars ran away? A. Yes, sir. Q. What was the condition of the throw-off switch then; was it open or closed? A. It was open. Q. So that if the cars had been started and the switch in that condition they would have been ditched? A. Yes, sir. Q. Did you take notice of the condition of the brakes on this draught of coal cars? A. I did. Q. Did you notice the condition of the brakes in the afternoon? A. I only noticed the condition of the brake about half past four or five o'clock. Q. Please tell the jury what condition you found the brakes in; whether you examined the brakes and why you did it and what condition you found the brakes in at half past four o'clock in the afternoon? A. I examined the first three brakes on the train nearest to the throw-off switch. I found the brakes set. Q. Were they set hard or tight? A. Yes, sir, the brakes were set very tight. I could not make them any tighter. I tried to tighten the brakes up tighter. The brakes were set tight enough to hold the cars. The switch was set to throw the cars off in case anything would happen to them. Q. The brakes

that were set, were they on the car nearest to the switch? A. The first three brakes; yes, sir. The two brakes in the first car and the first brake on the second car were set. Q. Did you look at the brakes yourself? A. Yes, sir; I examined the brakes. The brakes were all right."

The testimony of the last witness shows the condition of the cars, the brakes and the switch at nearly, or quite, five o'clock in the afternoon. The cars were in the same position as when they were left by the crew in the morning at eleven o'clock. The brakes on the two cars in question were in the same condition as then, they were set tight and held the cars. The throw-off switch was open as it was left in the morning, so that if the cars had started they would not have run down the track but would have been derailed on the meadow. The absolute sufficiency of the precautions taken was conclusively proved by the fact that they did prevent the cars from starting, and made it impossible for them to run down the track if they had started. It cannot therefore be argued that they were insufficient. The jury has found that the defendant did its whole duty in the way of precautions and were not guilty of any negligence which led to the collision.

The manner in which the collision was produced was fully shown by the evidence which was entirely uncontradicted. Between five and six o'clock on the same afternoon, a boy named John McCoskey got on the cars between the second and third cars and was seen hammering at the ratchet wheel of the brake with a coupling pin which he had in his hands. A very few minutes before he got on the cars he turned the throw-off switch in front of the cars so as to close it and let the cars run down on the track. He hammered at the cog which holds the brake for a minute or so, until he got it loose when the cars started on the track. Three boys testified to seeing this, and one of them, Alexander Smoogen, jumped on the cars and tried to stop them with the brakes, but did not succeed, and he then jumped off to save himself. The cars ran on down the side track and on to the main track, where they collided with the miners' train, and did their dreadful work. There is not the least dispute as to this state of facts, and the jury confirmed it by their verdict.

It will thus be seen that the collision was produced by the

criminal trespass of a stranger to the defendant company, for whose acts they were not in the least degree responsible, and over whom they had no control. The offence of which the boy McCoskey was guilty, in misplacing the switch, was a most atrocious and abominable crime, for which under the crimes act of 1860 he was liable to a fine of $10,000 and an imprisonment at labor for ten years. By the law of May 26, 1891, P. L. 121, the penalty for the same offence, when it results in death, is a conviction of murder.

The question in this case is whether the defendant company was bound in the exercise of its duty of extraordinary care to take extraordinary precautions against the grossly criminal acts of strangers.

That it did take amply sufficient precautions against everything short of the grievous crime of misplacing a switch, is conclusively established by the uncontradicted evidence in the case, and by the verdict of the jury. The learned court below did, with some well founded hesitancy, commit to the jury the question of the defendant's negligence in the precautions they took. It was argued in the lower court as here that the defendant might have opened the lower switch, or put locks on the switches, and therefore they did not exercise the very highest degree of care which was possible to human skill, prudence and foresight. But this argument overlooks the fact that the upper switch was left open, which made it impossible for the cars to get to the lower switch, and the further fact that any person who would misplace a switch would break a lock, if it were there. But the argument is fatally defective in that it is founded upon the theory that transporting companies are legally bound to take precautions against the criminal acts of strangers, and are responsible for such acts if they do not. We have not been referred to any case, and we know of none, in which such doctrine has ever been held.

In the case of Railroad v. Hummell, 44 Pa. 375, this court said : " If the law declares as it does, that there is no duty resting upon any person to anticipate wrongful acts in others, and to take precautions against such acts, then the jury cannot say that a failure to take such precautions is a failure in duty and negligence. . . . Were it worth while, abundant authority might be cited to show that the law does not require any one to pre

sume that another may be negligent, much less to presume that another may be an active wrongdoer. . . . It is too well founded in reason, however, to need authority. We act upon it constantly and without it there could be no freedom of action."

The rule, that the carrier is bound to exercise the highest degree of care that is possible to human foresight and prudence, does not require a construction that will make the carrier an insurer against accidents, nor the prevention of accidents by the employment of means which, if the accident could have been foretold might have been used to prevent it, nor for the wrongful acts of strangers, unless the carrier was remiss in not discovering them in time to avert the injury, nor for an impracticable character or extent of precaution which could not be observed without so ruinous a cost as to destroy the business, and in all cases the liability is only such as results from negligence. Our own cases illustrate all these qualifications of the rule of highest possible care.

Thus in Meier v. Penna. R. R. Co., 64 Pa. 225, the plaintiff's injury was sustained while he was a passenger on a sleeping car in consequence of the breaking of the axle of the forward truck in two places. The end of the car then dropped down and slid along the rails. The plaintiff was thrown forward, the ligaments of the right knee were torn, and the bones of his leg were severely bruised. The plaintiff was entirely without fault and the accident was the result of a defect in the axle. Of course the presumption of negligence arose, and the defendant undertook to rebut it by proving that new wheels and axles had been put on a few months before, and that they were of good quality; that they were constantly inspected, that the road was in good order and the train running at proper speed, and that they had employed such appliances as were approved by the most experienced railroad operators and mechanics. The case was tried in the District Court of Philadelphia by the very able and distinguished Judge THAYER, then of that court, who submitted the question of negligence to the jury in a lucid and exhaustive charge which received the full approbation of this court. The verdict was for the defendant. The plaintiff sued out a writ of error and assigned portions of the charge, which qualified, or, rather, carefully stated, the rule of highest possible care, but this court approved his rulings and sustained

the judgment. The following language of the charge was assigned for error: "That common carriers of passengers are liable only for negligence; they are not insurers of the safety of their passengers like common carriers of goods. . . . But common carriers of passengers are not liable for injuries happening to passengers from unforeseen accidents, where there has been no negligence. They do not undertake absolutely to be responsible for unavoidable accidents; for accidents, in a word, which are not the result of their own negligence."

Concerning this part of the charge, Mr. Justice AGNEW, delivering the opinion of this Court, said: "It is agreed on all hands, says Judge REDFIELD, in his work on Railways, ed. 1867, p. 174, that carriers of passengers are liable only for negligence either proximate or remote, and that they are not insurers of the safety of their passengers, as they are as carriers of goods and baggage of passengers. The numerous cases cited from which this result is drawn, justify this statement. . . . In all the Pennsylvania cases, it will be found that negligence is the ground of liability on the part of a carrier of passengers. Absolute liability requires absolute perfection in machinery in all respects, which is impossible."

Judge THAYER also charged: "2. That the rule in regard to carriers of passengers is this: the utmost care and vigilance is required on the part of the carrier. The rule does not require the utmost degree of care which the human mind is capable of imagining; but it does require that the highest degree of practicable care and diligence should be adopted that is consistent with the mode of transportation adopted. Railway passenger carriers are bound to use all reasonable precautions against injury of passengers; and these precautions are to be measured by those in known use in the same business which have been proved by experience to be efficacious. The company are bound to use the best precautions in known practical use. That is the rule; the best precautions in known practical use to secure the safety of the passengers; but not every possible preventive, which the highest scientific skill might suggest."

In regard to this part of the charge we said: "The rule laid down by the learned judge, in the language quoted in the second assignment, is a correct summary of the law. The rule of

responsibility differs from the rule of evidence. Prima facie, where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence casting upon the carrier the onus of disproving it (citing several cases). This is the rule when the injury is caused by a defect in the road, cars, or machinery, or by a want of diligence or care in those employed, or by any other thing which the company can and ought to control, as a part of its duty to carry the passenger safely; but this rule of evidence is not conclusive. The carrier may rebut the presumption and relieve himself from responsibility by showing that the injury arose from an accident which the utmost skill, foresight and diligence could not prevent. . . . To ask more is to prohibit the running of railways, unless they possess a capital and surplus which will enable them to add a new element to their business, that of insurance."

It will be observed that the rulings of the court below were approved in a case in which the passenger was injured while traveling on the defendant's car, without any fault of his own, and where the cause of his injury was a defect in one of the axles of the car, in consequence of which it broke. An appliance was defective and the defendant was relieved from liability, although the defect was not discovered, and the rule of highest skill, foresight and diligence, was held not to be infringed by the non-discovery of the defect.

How much stronger is the present case. Here the injury was not the result of any defect in any of the appliances used by the defendant, nor by any want of skill, foresight and diligence which was humanly possible. The injury was not the result of any act of carelessness or negligence on the part of anybody. It was the result, exclusively, of a deliberate, intended, willful, affirmative, positive act of criminal trespass. No mere act of carelessness or negligence could have turned over the switch, which was set to derail the cars, so that it would throw the cars on the track instead of off. No mere act of carelessness or negligence could, or would, have taken out the coupling pin which held the cars together. No mere act of carelessness or negligence could, or would, have driven back the ratchet which held the brakes in place, four of them in all, so as to set the cars in motion. All, and every one, of these

acts required special physical effort, exerted for the very purpose of releasing the cars from the entirely sufficient restraints which had been imposed upon them by the company's agents, and these efforts were made each one after the other, in a wicked and deadly succession, until the horrible purpose was accomplished and the work of death and destruction resulted. How can it be said that any human skill, foresight, or diligence could have divined, or believed, or imagined that such acts would have been perpetrated? It would require a gift of omniscience to foresee them, a gift of prophecy to foretell them, and neither of these qualities is human. ·It is useless to say that additional precautions might have been taken. So they might, if the possibility of such acts could have been known in advance. A force of men might have been stationed at the cars, to prevent the possibility of another force of men invading them and setting them loose, but such transactions are outside the pale of human experience, and it is simply preposterous to say that the omission to take that kind of precautions is negligence, in any conceivable aspect of the case. Placing blocks under the wheels, and locks on the switches, avail nothing against the deliberate, willful and intended purpose to set free loaded cars in such circumstances as these. The same purpose which would turn over the switch, take out the coupling pin, and then hammer at the brakes until they were opened, would remove the blocks from the wheels and shatter the lock on the switch. But it is not one or another particular act of precaution, the want of which is to be set up as a test of the legal duty of precaution, but the whole criminal purpose sought to be accomplished. If that purpose and corresponding action were such as not to subject the defendant to a duty of precaution against it, the presence of some precautions, and the absence of another, which might or might not have been effective, or might have been more effective than those that were observed, is of no moment in the consideration of the general question as to the existence of the legal duty. If the purpose and the act were criminal, and were those of a stranger, and could not have been foreseen by any human skill or knowledge, the duty of precaution against such acts does not arise, and negligence does not result from the want of such precautions.

The rule of highest skill, care and prudence does not require

the impossible, or the very extreme of care and precaution that can be imagined. In Shearman & Redfield on Negligence, section 266, it is thus expressed: " This doctrine is not to be construed as meaning that the carrier must adopt all the precautions that an ingenious mind could suggest, or have all the skill that science could give, nor that he must use all the precaution which, after an accident has happened, it can be seen would have sufficed to avoid it, nor even that he must use such precautions as one would use who knew beforehand that the accident would otherwise certainly occur." Again at section 270 the writer says : " A railroad company is certainly not liable for an injury arising from a break in its tracks caused by a sudden and extraordinary flood, *or by the willful act of a stranger*, unless the injury happens to a train which the servants of the company run upon the broken road after they, or those who ought to advise them, have had notice of its condition, or have had sufficient opportunity to learn it."

In 2 Wood's Railway Law, at section 302, the writer, presenting the subject in words nearly identical with the foregoing, continues : " The law does not require such particular precaution as it is apparent, after the accident, might have prevented the injury, but such as would be dictated by the utmost care and prudence of a very cautious person before the accident, and without knowledge that it was about to occur. The defendant must use the highest degree of practicable care and diligence that is consistent with the mode of transportation adopted." This was the precise language of the court in the case of Bowen v. New York Central Railway Co., 18 N. Y. 408.

The rule is stated in the same way in Redfield on Carriers, section 347, and note 19.

The rule is stated in substantially the same way in 2 Rorer on Railroads, 955, thus : " But this rule of greatest possible care is not to be understood as requiring the utmost degree of care which the human mind can attain to, or is capable of inventing. Such applications of it would involve such an expenditure as would tend to prevent all persons of ordinary prudence from engaging in the business. It simply means greatest degree of care that is consistent with that mode of transportation. It does not contemplate such a measure of care as will render it practically impossible to continue the

railroad transportation of passengers. . . . . They are by no means insurers of human life, and are not accountable for the results of latent defects which the usual and well recognized tests of science and art fail to detect, nor are they liable for accidents which skill and experience are unable to foresee and avoid."

The very question which arises in this case was decided in Deyo v. New York Central R. R., 34 N. Y. (Court of Appeals) 9. The plaintiff was a passenger on the railroad of the defendant at night. " The train was thrown from the track through the culpable act of some unknown person who maliciously or mischievously drew the spikes which fastened the chairs and the rails. Marks were visible on the ties, of a claw bar having been used in removing these spikes. Two trains had passed over this section of the road at the point where the injury happened. . . . The road was in good condition when these trains passed over it in safety and without any obstruction." DAVIES, J., in delivering the opinion said: " The only question upon this appeal is, whether there was any evidence of negligence on the part of the defendants or their servants, sufficient to warrant the learned justice who tried the action in submitting that question to the jury. It is a familiar principle that carriers of passengers are not insurers of the safety of their passengers. Their duty is measured by the dangers which attend railroad carriage ; and the utmost foresight as to possible dangers and the utmost prudence in guarding against them are required to exempt them from liability in case of injury to a passenger. . . . There was no evidence in this action of any negligence on the part of the defendants, their servants or agents. This portion of the track was laid with the best and most improved rail. It was in perfect order. It had been passed over by their trackmaster a few hours before the accident. Within two hours before it occurred, three trains of cars had passed over it in safety, and it must then have been in complete order. The proximate cause of the accident was the removal of the spikes which fastened the chairs and rails to the ties and sleepers. It is apparent that, as soon as these fastenings were removed, a superincumbent pressure would displace the rails, and thus inevitably throw the cars off the track. No human care or foresight could guard against such a diabolical

act, committed under the circumstances developed in this case. It is clear that these fastenings must have been removed after the last train going east had passed the point where the road was disturbed."

The court below had on the trial granted a compulsory non-suit, and the court of appeals affirmed the judgment saying: " If, therefore, the jury on this testimony had found that the defendant had been guilty of negligence, it would have been the duty of the court to have set aside the verdict."

It will be observed that in the case just cited there was no affirmative proof as to who removed the spikes and thus caused the rails to become displaced. There was therefore a possibility that they might have been removed by some vindictive employee who had been discharged. In fact there was evidence to prove just such a state of facts, but nevertheless the court held that the company was not liable. But in the case at bar there was full proof that the cars were uncoupled, and the brakes loosened, and the switch turned back, by a person who was a total stranger and having nothing to do with the defendant company, and for whose acts, therefore, the company was not responsible in any conceivable manner.

The case of Curtis v. The Rochester & Syracuse R. R. Co., 18 N. Y. Reports, 534, is another instance in which the same doctrine of non-liability was held, although there, the evidence was sufficient to warrant a verdict of negligence. The plaintiff was a passenger and was injured by the car running off the track at a switch at a station, which was misplaced, on the main track. There was no evidence to show how it became misplaced, and as it was at a station there was sufficient evidence of want of care to carry the case to the jury. But the court of appeals in their comments upon the rule of duty applicable in such cases said : " Carriers of passengers are not insurers ; and many injuries may occur to those they transport for which they are not responsible. They are, for obvious reasons, held bound to exert the utmost care and vigilance to secure the safety of passengers, and are responsible for the slightest negligence. But injuries may often happen through the fault or misconduct of those whose acts are in no way chargeable to them. . . . Still, accidents may occur from a multitude of causes, even upon a railroad, for which the company is not responsible. If obstruc-

tions are placed by strangers, upon the road, either through accident or design, the company is not responsible for the consequences, unless its agents have been remiss in not discovering them."

That is precisely this case. ₒ These cars were in a place of safety and amply secured against either leaving their position or running on the main track, by a switch, so as to derail them if they did get loose. But they were detached from the other cars, their brakes were opened and the derailing switch turned back by one who was a stranger, and, within a very few minutes after this was done, the collision occurred. There was no time for the defendant's agents to discover the mischief, and they cannot be charged with negligence in that respect. So far as this defendant is concerned, it is of no consequence who it was that committed this crime nor what his motives were. He was a stranger over whom they had no control, and they were not responsible for his acts.

In two of our recent cases the rule of the presumption of negligence from the mere fact that the plaintiff was a passenger and was injured, has received qualifications which are strictly applicable to the case at bar. The first of them is Penna. R. R. Co. v. MacKinney, 124 Pa. 462, in which the plaintiff was a passenger on the defendant's train, and while reading a newspaper in his seat at an open window, was struck in the eye by a hard substance and seriously injured. On the trial the court below instructed the jury that they should start with the presumption that the defendant was guilty of negligence from the mere happening of the accident, and that it thereupon devolved upon the defendant to rebut that presumption and show that they were not negligent. We held that this was error, because the accident occurred from something extraneous to the railroad and the appliances of travel, and it would be necessary for the plaintiff to go further and affirmatively prove that there was negligence. The present Chief Justice, in delivering the opinion, pointed out the difference between an accident resulting from the mere operation of the road, and one which was the result of some extrinsic cause. In the former the presumption of negligence arose from the mere happening of the accident, in the latter no such presumption arose, and the fact of negligence for which the defendant was responsible, must be proved

by satisfactory testimony, just as in any ordinary case between strangers. Concluding, he said : " If the case had been submitted to the jury on the evidence, and they had found therefrom that the plaintiff's injury resulted from something connected with the operation of the railroad, and not from something entirely disconnected therewith, and with which neither the company nor its employees had anything whatever to do, that would have raised prima facie a presumption of negligence on the part of the company, and thrown upon it the burden of proving that it did not exist."

In the present case the injury having occurred as the result of a collision of cars on the railroad, the plaintiff was entitled to the benefit of a presumption of negligence, and the court below so charged the jury. But the defendant met and rebutted that presumption by showing conclusively, and without the least contradiction, that the collision was occasioned solely by the criminal act of a stranger with whom neither the company nor its agents had anything to do. As this was an undisputed fact, it is almost impossible to understand why the learned court below would not have been justified in withdrawing the case from the jury, as was done in the case of Deyo v. N. Y. Cent. R. R. Co., supra, on the ground that, upon the whole testimony, no negligence was shown for which the defendant was responsible. But the learned court left that question to the jury, and the jury found that the defendant was not guilty of any negligence which produced the injury, and that verdict of course settles the question.

The appellant claims that the court below did not dwell with sufficient force and emphasis upon the rule of the highest degree of care, skill and prudence, which was humanly possible. It is sufficient to say in reply, that, in view of the entirely uncontradicted testimony in this case, it was only necessary to inquire whether the defendant had rebutted the presumption of negligence which arose from the mere fact of the injury. There was nothing in the case but the mere presumption. All of the actual testimony as to the real facts of the occurrence, tended, in a most eminent degree, to show that there was no negligence for which the company was responsible, and that the injury was the result of the willful criminal trespass of a stranger. In such circumstances the highest inquiry that

could legitimately be conducted by the jury, was whether there was any negligence on the part of the defendant in the precautions taken against such an accident. That question was fully submitted by the learned court to the jury, with instructions to find for the plaintiff if they found such negligence. The appellant's points on the subject of the highest possible degree of care were affirmed, and the remark of the court below that the principle was very strongly expressed, was entirely correct in view of the manifest facts of the case. So also his expression of individual opinion that the precautions taken by the defendant were sufficient to relieve them of the charge of negligence was appropriate and just in view of the testimony. He distinctly told the jury it was for them to decide the question, and left them entirely free to act upon their own judgment.

In the case of Latch v. The Rumner Railway Co., 3 Hurlst. & Nor. 930, the plaintiff's trucks were derailed by the misplacement of the points of a siding. There the evidence showed that shortly before the accident a stone was found inserted under the lever of one of the points, and the defendant claimed that this had caused the accident, and as it was the willful act of a stranger they were not responsible. The judge who tried the case thought there was no evidence of actual negligence, and told the jury that if the defendant's account was correct they were entitled to a verdict, unless the jury thought there was negligence in not having a person to take care of the points, and he said he did not think there was. A verdict was rendered for the plaintiff, and on a rule for a new trial the case was heard in banc and the rule made absolute. The court said : " There was evidence that there had been a willful act on the part of a stranger which would have caused the accident, and no evidence of negligence on the part of the defendants. None was suggested except their not having a person always at the spot to look after the ' points,' which they were not bound to have. The siding had been in that state for months, and no accident had happened. The verdict was clearly contrary to the evidence, and there must be a new trial." In this case there was no proof as to who had placed the stone under the lever, and the verdict had found negligence as a fact, but the court set it aside as unwarranted by the testimony.

Our own very recent case of Thomas v. Phila. & Reading R. R. Co., 148 Pa. 180, affords a still more striking illustration of the inapplicability of the rule of the highest possible care, in the case of an injured passenger, and of the necessity of affirmative proof of actual negligence, before a recovery could be had. The facts, and the conclusions of this court, are well stated in the opinion of Chief Justice PAXSON. " On June 5, 1890, the appellant was a passenger on the cars of the defendant company, and in the vicinity of Pottstown was struck on the arm by a missile with sufficient force to cause a fracture thereof. It was not shown what caused the injury; the appellant did not see the missile nor was it found in the car. There was no evidence that any one was near the train on the outside who could have inflicted the injury. This suit was brought to recover damages for the injury referred to. The theory of the appellant was that it was caused by a loose nut, thrown from one of the switches of the defendant's roadbed, over which the train was passing at the time. This was a mere theory however without any evidence to sustain it. The appellant contended that under such circumstances the question of the defendant's negligence should have been submitted to the jury. The court took a contrary view of the case and directed a verdict for the defendant. This was the error assigned. . . . There was nothing in the evidence to connect the accident with any defect in the cars or machinery, the movement of the train, or in any of the appliances of transportation. There was nothing therefore to submit to a jury. It would be as reasonable to hold that a bullet fired into the car from without, by means of which a passenger is killed, is evidence of negligence on the part of the company."

It will be seen that in this last case the rule, that a presumption of negligence arises in favor of a passenger traveling on a train from the mere fact of the accident, was refused applicacation, and the rule that the highest possible care must be applied was denied enforcement, because there must be evidence to justify it in the intrinsic facts of the case. Neither of these rules therefore is of universal application, and the particular circumstances must be considered in order to determine how far they control the decision.

Here the legal presumption was applied because the injury

resulted from a collision of cars. But the presumption having been fully rebutted by proof that the collision was the result solely of the criminal act of a stranger, it suffices no further purpose. Had the learned judge directed a verdict for the defendant it is scarcely possible that we would have interfered with it. But he left the question of actual negligence to the jury, who properly decided there was none, and that is the end of the plaintiff's case. It was eminently not a case in which the jury should be fired with urgent repetition of the doctrine of legal presumption of negligence, and the rule of the highest possible human skill, foresight, and diligence, but rather, one in which the precise limitations of the defendant's liability should be presented calmly and dispassionately, and this is exactly what was done.

The complaint that the judge expressed an opinion on the facts as to whether the defendant had exercised sufficient precautions, is without merit. In the case of Leibig v. Steiner, 94 Pa. 466, we said: "A judge may give his opinion freely on the weight and value of evidence, for he is the best and safest adviser of the jury; but he has no authority to decide any question of fact, when the party affirming it has sustained his averment by any reasonable proof. Very strong expressions of opinion on the facts are tolerated, indeed sometimes may be necessary. . . . Exceptional cases arise where it is the duty of the judge to express his opinion of the facts and guide the minds of the jury to a correct view of the evidence; and, therefore, it has been settled that when he does so without misleading or controlling them in the disposition of the facts, there is no ground for reversing."

In the present case the learned judge who tried it was particularly careful to say to the jury, that, while personally he thought the company was not careless in not opening the lower switch or putting on locks, and that he thought the company had done all that a prudent man would do, nevertheless he left it to them to say whether there was carelessness on the part of the defendant in leaving the cars as they did. He also said that he left it to the jury to say whether the defendant was responsible for the misconduct of bad boys, that while it was his own opinion that they were not, he was bound to leave that question to them, and did so. There is certainly no error

in this.   No attempt was made to control the action of the
jury, the decision was left exclusively to them.   The circum-
stances were such as to call for words of caution from the
court and the expression of an individual opinion in view of
the remarkable facts of the case was not at all inappropriate,
especially as the jury were told that it was for them to decide
the whole matter.

In the case of Spear v. The P. W. & B. R. R. Co., 119 Pa.
61, we said: "The learned judge who tried this case in the
court below, was persuaded that the evidence given on behalf
of the defendants was sufficient to rebut the presumption of
negligence, and he had a right to express an opinion on that
subject, but the question was not one of law for his determina-
tion.   It is the right, and in some cases it becomes the duty,
of a judge to express his opinion upon the character and weight
of the testimony which he must submit to the jury, and it
should be done in such a manner as to leave them in possession
of the question that belongs to them."

To the same effect is Pennsylvania Company v. Allen, 3
Penny. 170.

Kilpatrick v. Commonwealth, 31 Pa. on page 216: "A judge
may rightfully express his opinion respecting the evidence and
it may sometimes be his duty to do it, yet not so as to with-
draw it from the consideration and decision of the jury."

Bitner v. Bitner, 65 Pa. on page 363: "Very strong express-
ions of opinion on the facts are tolerated, indeed sometimes
may be necessary."

In Johnston v. Commonwealth, 85 Pa. 60, on a trial for
burglary, the court in the charge said : "The commonwealth
claims that evidence can establish nothing if this evidence will
not establish the facts alleged in the third count, and I for my
part cannot see how the jury can hesitate a moment to convict
the prisoner on the third count."   Held not to be error under
the facts of the case, although it was a strong expression of
opinion.

See also McClintock v. Pa. R. R. Co., 21 W. N. 133; Doyle
v. Un. Pass. Railway Co., 147 U. S. 413 and 430.

The assignments of error are all dismissed.

Judgment affirmed.

MR. CHIEF JUSTICE STERRETT, dissenting:

If the right of trial by jury, " as heretofore," is to " remain inviolable," it behooves us, in my judgment, to disapprove of such constraining influence as was improperly brought to bear upon the jury in this case.

While the learned judge, who presided at the trial, rightly conceded that the case hinged on questions of fact which he could not, in any event, withdraw from the jury, he submitted them with evident reluctance, and with such an emphatic expression of his own opinion that said questions should all be determined in favor of the company defendant that it was next to impossible for the jury to discharge their duty, as the constitutional triers of fact, with that sense of unconstrained freedom which should always characterize the deliberations of every jury in such cases as this.

Referring to the duty which the company as a common carrier of passengers owed to the plaintiff, and whether that duty had been properly performed, etc., he said : " Under the law applicable to this case I must submit the question to you to determine whether you find the defendant was careless in not opening the lower switch or putting on locks. Personally, if I were a juror, I would say no. If I were a juryman, I would think that the company had done all that any prudent man would do ; it braked its cars, opened the throw-off switch and left them there. But the question must be submitted to you, as jurors, to say whether you find it was carelessness on the part of the defendant to leave those cars there on the decline on which the cars would have run into the main road in case they had got loose."

Again he said: " There is another part of the case which is brought out with great strength under the evidence, and proved, I think to your satisfaction, as at least it is to mine, that this accident was caused by the willful misconduct of certain boys ; that those boys meddled with those cars and that switch, and that it was their willful misdoing that caused the accident. I leave it to you to say whether you think under those circumstances a company ought to be held responsible for the malicious, willful misconduct of bad boys. My own individual opinion in that case is that they ought not, but as I am bound to leave that question to you, I do leave it to you to determine."

Again, in answering defendant's fifth point, in which he was asked to say, as matter of law, that " neither the absence of a lock from the throw-off switch in the immediate vicinity of the coal cars, nor the failure to open the double rail switch, used as a throw-off, near the Corbin colliery, can be regarded as any proof of negligence on the part of the defendant," he again volunteered his own opinion on the question, as one of fact which, as he said, " must be submitted to " the jury, by saying, in substance, that the manifest acts of omission stated in the point could not be regarded as any proof of negligence.

But the learned judge's oft-repeated declarations of his own opinion on questions of fact which were exclusively for the consideration and determination of the jury, and what he would do if he were a juror, etc., are not all.   There are grave errors of law for which alone the judgment should be reversed.   In the paragraph first above quoted from the charge, the standard of duty applied to defendant company as a common carrier of passengers is ordinary care merely, viz.: " If I were a juryman, I would think that the company had done all that any prudent man would do ; it braked its cars, opened the throw-off switch and left them there."   It is no compliment even to an ordinarily prudent man to say that he would not have done more than brake the cars in such a way that even children could at any time start them down grade on their death-dealing errand, or open the throw-off switch and leave the lever unlocked and unsecured, in any manner, so that any thoughtless or mischievious boy could shut it again with perfect ease.   But, when we apply to defendant's conduct, in leaving the coal cars in such an insecure condition, etc., the high standard of care which the law requires carriers of passengers to exercise, how widely different is the case ?   The contract to carry implies that every precaution which human skill could suggest has been taken to guard against every apparent danger that may beset the passenger, and that same degree of care will continue to be exercised until he reaches the end of his journey.

The siding or branch, on which the coal cars stood, was of unusually heavy grade, descending rapidly to its junction with the main line, on which was the train in which plaintiff and other passengers were being transported.   As a necessary precaution against the danger of cars escaping by accident or other-

wise and running down into the main line, the two throw-off switches were constructed, one near the point where the coal cars stood, and the double rail switch further down. The former was opened, as is alleged, but left unlocked and without any kind of fastening. The latter was not even opened. If it had been, the escaping coal cars would have been arrested by it in their downward course. If the upper switch, alleged to have been opened, had been locked or otherwise securely fastened, the danger of its being opened would certainly have been greatly lessened. The omission to even open the lower switch, and to use proper means to prevent the closing of the upper one, were certainly evidence of culpable negligence on the part of the company.

The construction of these throw-off switches is proof of their necessity, but if they were not used or not properly secured, of what avail could they be in averting danger? It is too plain to admit of any doubt that even suggesting to the jury that these acts of omission should not be regarded as any proof of negligence was error.

The unqualified affirmance of defendant's second point was plain error. In affirming that point, without any qualification or explanation, the learned judge instructed the jury, in the words, thereof, thus: "The uncontradicted testimony on the part of the defendant, shows that the proximate cause of the collision, in which the plaintiff was injured, was the wrongful act of trespassers upon defendant's cars. For such wrongful act, the company defendant, under the circumstances of the present case, is not responsible; and if the jury believe the said testimony, as to the proximate cause of the collision, their verdict should be for defendant." The vice of this instruction is that it ignores the question of defendant's omission to exercise that high decree of care which the law requires. It was clearly the duty of the company to take every precaution, which human skill and foresight could suggest, to guard against every apparent danger that might beset the plaintiff and other passengers. It foresaw the danger of cars being detached, by accident or otherwise, and running down the heavy grade, uncontrolled, into the main track, and it accordingly provided the two throw-off switches to guard against that apparent danger, but it omitted to properly use the means which it had pro-

vided expressly for that purpose. It omitted even to open one of the switches, and left the other unsecurely opened. That omission was at least such evidence of negligence as would have warranted the jury in finding that its neglect of duty was the cause of the collision.

There was also error in affirming defendant's first point as presented. Other errors of minor importance might be noted, but those, to which special reference has been made, are sufficient to show that a fair trial was not accorded to plaintiff. The emphatic and oft repeated expressions of opinion, etc., above referred to, were unwarranted, misleading and erroneous. They were an uncalled for invasion of the province of the jury. The line of demarcation between the duty of the court, as expounder of the law, and that of the jury, as the constitutional triers of fact, should be carefully observed. While, on the one hand, the court should not permit the jury to disregard or evade its instructions as to matters of law, it should be equally careful not to invade the province of the jury, and take upon itself the determination of questions of fact about which there is any doubt or dispute.

For the reasons above suggested, the judgment should be reversed and a new trial ordered.