68  455
97  212
68  455
131  510

[No. 9077.   Department One. — January 29, 1886.]

## OAKLAND BANK OF SAVINGS, APPELLANT, v. SAMUEL S. MURFEY ET AL., RESPONDENTS.

NOTARY PUBLIC — LIABILITY FOR NEGLIGENCE — FALSELY CERTIFYING TO IDENTITY OF GRANTOR IN DEED. — On the 29th of November, 1876, one Leroy came to the office of the defendant Murfey, a notary public, falsely introduced himself as M. B. West, the owner of a certain piece of land, and requested the defendant to prepare a deed of it from him to one Henry Harmon. The defendant did as requested, and Leroy signed the name of M. B. West to the deed, and in that name acknowledged the execution. The defendant thereupon affixed his certificate to the deed, to the effect that M. B. West, the person described in and who had executed the deed, was personally known to him, and had acknowledged before him that he executed it. Leroy then took the deed to the plaintiff, to whose officers he was an entire stranger, and representing himself to them as Harmon, procured from it a loan, secured by a mortgage on the property described in the deed. The plaintiff, after examining the record title to the property, and finding it to be in West, made the loan without any inquiry as to the identity of the supposed Harmon, and upon his representations that West had deeded it to him. The action was brought on the notarial bond of the defendant to recover the damage suffered by the plaintiff through the loss of the money loaned, which it alleged was caused by the negligence of the defendant in falsely certifying to the identity of the grantor named in the deed, without personal knowledge or proof of his identity. *Held,* that the defendant was not liable, as his negligence was not the direct or proximate cause of the loss.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*E. W. McGraw*, for Appellant.

The negligence of the defendant was the proximate cause of the loss, and the contributory negligence of the plaintiff was not such as to prevent it from recovering. (*McQuilken* v. *C. P. R. R. Co.*, 64 Cal. 463; *Moulton* v. *Caldriate*, 28 Kan. 392; *Langan* v. *St. L. & I. M. etc. Co.*, 72 Mo. 302; *Gale* v. *Lisbon*, 52 N. H. 174; *Smith* v. *Conway*, 121 Mass. 216; *Spofford* v. *Harlow*, 3 Allen, 176; *Wrinn* v. *Jones*, 111 Mass. 360; *Kidder* v. *Dunstable*, 11 Gray, 342; *Damon* v. *Scituate*, 119 Mass. 66; *Tuttle* v. *Lawrence*, 119 Mass. 276; *Eaton* v. *Winnie*, 20 Mich. 166; *Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 390; *Pennsylvania R'y Co.* v. *Ogier*, 35 Pa. St. 60; S. C., 78 Am. Dec. 322; *Needham* v. *S. F. etc. R. R. Co.*, 37 Cal. 419; *Insurance Co.* v. *Tweed*, 7 Wall. 52; *Wherley* v. *Whiteman*, 1 Head, 623; *Strickfadden* v. *Zipprick*, 49 Ill. 286.)

*Mastick, Belcher & Mastick*, for Respondents.

The plaintiff is not entitled to recover, as it was guilty of contributory negligence, which was the proximate cause of its loss. (*Gay* v. *Winter*, 34 Cal. 163; *Robinson W. P. R. R. Co.*, 48 Cal. 421; *Fernandes* v. *S. C. R'y Co.*, 52 Cal. 52; *Nehbras* v. *C. P. R. R. Co.*, 62 Cal. 334; *Milton* v. *H. R. Steamboat Co.*, 37 N. Y. 210; *Wilson* v. *Newport Dock Co.*, L. R. 1 Ex. 177; *N. J. Ex. Co.* v. *Nichols*, 33 N. J. L. 439; *Needham* v. *S. F. etc. R. R. Co.*, 37 Cal. 421; *Trow* v. *Vt. Cent. R. R. Co.*, 24 Vt. 494; S. C., 58 Am. Dec. 191; *Washington* v. *B. & O. R. R. Co.*, 17 W. Va. 196; *Carter* v. *Towne*, 103 Mass. 507; *Flemming* v. *S. P. R. R. Co.*, 49 Cal. 253.)

SEARLS, C. — This is an action to recover damages upon the bond of defendant Murfey, as a notary public.

Defendant had judgment, from which, and from an order denying a motion for a new trial, the plaintiff appeals.

The findings in the case show, among other things, —

1. That the defendant Murfey was, on the third day of June, 1876, appointed a notary public for San Francisco, and gave bond in five thousand dollars, with Theodore Leroy and Michael Reese as sureties.

2. That on the 29th of November, 1876, Wright Leroy came to the office of Murfey in San Francisco, and introducing himself as M. B. West, requested Murfey to draw a deed from him to Henry Harmon for a lot in Oakland, the consideration expressed to be seven thousand five hundred dollars.

3. Murfey prepared the deed as directed, Leroy signed the name M. B. West to it, and in that name acknowledged the execution. Murfey thereupon made and affixed to the deed his certificate, certifying in substance that M. B. West, the person described in and who had executed the deed as grantor, was personally known to him, and had acknowledged before him, on the day named in the certificate, that he executed the deed. Having affixed his notarial certificate, Murfey handed the deed to Leroy, and he carried it away.

4. In the latter part of February, 1877, Leroy presented himself at the banking-house of the plaintiff in Oakland, and introduced himself under the name "Henry Harmon" to Mr. E. C. Sessions, the plaintiff's president, stated that he desired to borrow four thousand dollars on the lot, seventy-five by eighty feet, at the northeast corner of Grove and Fifteenth Streets, in Oakland. Mr. Sessions had a block book of Oakland before him, and turning to the lot mentioned, saw that it stood in the name of M. B. West, and so stated to Leroy, who, by way of explanation, said that he had made a trade with West, by which West was to convey to him this lot in Oakland in exchange for a gravel mine and a cash payment; that West had made the deed and left it in escrow, and he wanted the money to enable him to make the cash payment and close the transaction.

5. Mr. Sessions, being satisfied with the explanation, took Leroy to the loan teller's desk and directed the teller to make out and take the application, which he did.

6. The plaintiff's board of directors granted the application, and when Leroy came in a second time he was so advised and assented to the terms proposed by the board.

7. The examination of the title was then referred to the plaintiff's searcher, who reported the record title in M. B. West. Then a note and a mortgage, in which "Henry Harmon of Butte county" was named as mortgagor and the plaintiff as mortgagee, were prepared. A day or two later Leroy again presented himself at the president's room in the bank, and handed Mr. Sessions the forged deed. He looked at it and then took Leroy to Garthwait, the note teller, and requested him to attend to the note and mortgage. Garthwait handed the papers to Dusenbury, one of the tellers, who was also a notary. Leroy then signed the name "Henry Harmon" to the note and mortgage, and Garthwait signed his name as witness. Dusenbury thereupon, as notary, made and attached to the mortgage his certificate, certifying in substance that Henry Harmon, the person described in and who had executed the mortgage, was personally known to him, and had acknowledged before him, on the day named in his certificate, that he executed the mortgage. The deed and mortgage were then sent by the plaintiff to the recorder's office for record, and the four thousand dollars, less $110 for interest and charges, was paid over.

8. No one of the officers of the plaintiff had ever seen Leroy until the day he first came and introduced himself to Mr. Sessions as Henry Harmon, nor was any inquiry made by any one of them, at any time during the negotiations for the loan, as to his identity.

9. That the defendant Murfey was careless and negligent in taking and certifying the acknowledgment to said deed without personally knowing or requiring proof that the person subscribing the name "M. B. West" to said deed was in fact M. B. West.

10. That the plaintiff was careless and negligent in making a loan and taking a note and mortgage therefor from a person who was not personally known or proven to its president or some of its officers to be the person whose name was subscribed to such note and mortgage, and without any inquiry as to his identity, or who had held the said deed in escrow, or how the person exhibiting and leaving it with the president of the plaintiff obtained the possession thereof, and that the carelessness and negligence of the plaintiff was the proximate and immediate cause of all the loss and damage sustained by the plaintiff.

"For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the parties injured thereby for all the damages sustained." (Pol. Code, sec. 801.)

Section 1714 of the Civil Code reads as follows:—

"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person' except so far as the latter has willfully or by want of ordinary care brought the injury upon himself."

Murfey was guilty of negligence as a notary in taking the acknowledgment of the pseudo West, as a grantor in a deed, without personal knowledge or proof of his identity, and for such neglect he and his bondsmen are liable to those damnified thereby.

Did the damage which resulted to plaintiff follow as a proximate and legal result of the negligence of the notary? or was it the negligence of plaintiff that was the direct and proximate cause of the loss and damage sustained by it?

The court below finds that plaintiff was guilty of carelessness and negligence, and that such negligence was the proximate cause of its loss.

The earliest reported case in the English law on the

distinctive question of contributory negligence, is believed to be that of *Butterfield* v. *Forrester,* 11 East, 60, decided by Lord Ellenborough in 1809.

It is a marvel of brevity, but enunciates the principle underlying all subsequent cases on the subject, and is as follows: "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right. In cases of persons riding upon what is considered to be the wrong side of the road, that would not authorize another purposely to ride up against them; one person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action: an obstruction in the road, by the fault of the defendant; and no want of ordinary care to avoid it on the part of the plaintiff."

In the case at bar we have the spurious deed executed by a pretender in the name of West, and negligently certified by Murfey, the notary.

In other words, we find the defendant Murfey in fault.

This, however, did not absolve the plaintiff from the exercise of ordinary care.

Could the plaintiff by the exercise of such ordinary care have avoided the consequences of the defendant's negligence?

We think this question must be answered in the affirmative.

We may even go further, and add, that we do not see how the negligence of defendant was the direct and proximate cause of the injury to plaintiff.

He had, it is true, certified that West had executed a deed of the real estate to one Henry Harmon, but he had not in any way certified, and it was not his duty to identify or certify, to the identity of Harmon, the grantee, in such deed.

Armed with this document, Leroy, who had represented

himself as West and executed the deed as West, goes to the plaintiff, an entire stranger, and represents himself as Harmon, the grantee named in the deed, and without inquiry or identification, plaintiff loans him four thousand dollars, and takes from him, under the name of Harmon, a mortgage upon the property.

Suppose West, the real owner of the property, had executed this very deed to a man named Harmon, and that Leroy, having procured possession of such deed, had made the precise declarations to plaintiff which were made by him, and had procured the money upon a mortgage just as he did procure it, the loss to plaintiff would have been the same, and would have been produced in the same way, viz., by the negligence of the plaintiff in assuming, without proof or knowledge, that Leroy was Harmon, when in fact he was not.

If we are correct in this, it must follow that the proximate, the juridical, cause of the injury suffered by the plaintiff, was its credulity in taking the mere word of Leroy; and assuming without further proof that he was Harmon.

It seems that plaintiff not only took the assertion of Leroy that he was Harmon, but that one of its officers or servants, who was a notary public, by direction of the plaintiff, took and certified the acknowledgment of Leroy as Harmon to the mortgage, and thereupon the spurious deed and mortgage were both placed of record.

Can we absolve the plaintiff and its notary from the negligence which thus led them to loan the money of plaintiff to a knave, and at the same time hold the defendant responsible for his remote connection with the subject-matter?

We think not.

Plaintiff's negligence was the proximate cause of such injury; that is, it was in the order of causation next to and produced the result.

It must not be understood that the negligence of de-

fendant was not one of the conditions of the injury to plaintiff; on the contrary, it constituted a condition, in the order of causation, by which plaintiff's injury was brought about.

To illustrate what we mean by the terms "condition" and "proximate cause":—

Suppose A takes passage from San Francisco for Sacramento by railroad; at Port Costa the train is wrecked, by the carelessness of the railroad company, and A is injured. The negligence, being the immediate cause of the injury, is said to be the proximate, the juridical, cause thereof.

Again, suppose the same case, except that the train is wrecked without injury to A, who thereupon takes passage by steamer owned by B for the remainder of the journey; that by the negligence of B the steamer is wrecked and A is injured. In this last case the negligence of B becomes the proximate cause of such injury. True, but for the accident to the train the injury to A would not have occurred, for he would not have sought passage by steamboat, yet it was but a remote cause, a condition in the chain of causation which produced the result, and there could be no just cause for holding the railroad company liable.

"An act is the proximate cause of an event, when, in the natural order of things and under the circumstances, it would necessarily produce that event, when it is the first and direct power producing the result, the *causa causans* of the schoolmen." (Beach on Contributory Negligence, sec. 10.)

If the wrong and resulting damages are not known by common experience to be usually and naturally in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated, as cause and effect, to support the action. (Cooley on Torts, sec. 69.)

For remote or secondary causes men are not responsible.

*Causa proxima, non remota, spectatur.*   It may with propriety, we think, be said that plaintiff had a right to rest upon the presumption that a public officer, who is shown to have performed an official act, has done so properly, but if the evidence stops short, with showing that he was guilty of negligence, and fails to show that plaintiff was injured thereby, or if it proceeds further, and shows an injury sustained, but which was not the proximate result of such negligence, but was the natural and proximate outgrowth of some new and independent act or acts of negligence, on the part of the plaintiff, there can be no recovery.

There is nothing in this rule, in conflict with the doctrine of *McQuilken* v. *C. P. R. R. Co.*, 64 Cal. 463.   That case, in common with numerous other authorities to the same point, holds that "the act or omission on the part of a plaintiff, claimed to have contributed to the injury, must have direct relation to the act or omission charged to be negligence on the part of a defendant."

*There*, the act of the defendant was the cause of the injury, and it was liable, unless the negligence of the plaintiff had so commingled with it as to prevent a recovery.

*Here*, the injury was not the direct or immediate effect of the defendant's negligence; it was not proximate in time or causation, but required the interposition of new and independent agencies, which in turn became the fruitful cause of plaintiff's injury.

The objections to the findings seem to us technical and for the most part unimportant.

The fifth finding, after stating that Leroy presented himself at the banking-house of the plaintiff, and introduced himself to its president, E. C. Sessions, as Henry Harmon, and stated that he wanted to borrow four thousand dollars upon the lot of land in question;

that the title to the lot stood upon the records in the name of M. B. West of Butte County, but that said West in exchange for certain mining property belonging to him in said county of Butte, "and certain payments to be made," had bargained said lot to him, and had made and left a deed thereof in escrow with some person whom he did not name, "to be delivered upon the payment of the remainder of the purchase-money, and that he wished the money to close the transaction."

We have placed in quotations the portions of this finding which it is objected are not supported by the evidence.

The testimony of E. C. Sessions, the president of plaintiff, is too lengthy for reproduction here. It substantially, as we think, supports the finding. He does not, it is true, specifically state that Leroy said he wanted the four thousand dollars to make the final payment on the land, and that certain payments were to be made, and that he wished the money to close the transaction; but he does say that Leroy told him he "wanted to borrow some money." "I asked him how much and on what security. He said four thousand dollars, naming the property, and said he had purchased the property of Mr. M. B. West, who lived in Butte County. . . . . He said he had exchanged some property,—was trading with Mr. West a gravel mine, and he was in that line of business; that he had completed the transaction, that is, they had agreed upon the transaction, and that the deed was deposited in escrow, and that he wanted to close the transaction up, and that he would need some money."

We are not at all surprised that from this testimony the court should draw the very natural deduction that the money was wanted to pay a balance due on the purchase price of the land.

But the purpose to which the money was to be applied does not seem to us very important, and may well be treated as surplusage. "And now the transaction was

about to be closed up, and then the deed would pass to his hands," was testimony from which, coupled with other testimony in the case, the court was justified in finding the deed "was to be delivered upon payment of the remainder of the purchase-money."

The objections to the thirteenth, fourteenth, and fifteenth findings are purely technical, and relate to the identity of Harmon and Leroy.

The court finds in substance that Harmon did not execute the mortgage, etc.; that Harmon did not borrow the money from plaintiff; that Harmon did not leave with plaintiff the deed from West. This was most certainly warranted by the testimony. Leroy falsely assumed to be Harmon, and did all these things in the name of the latter. The objection to the seventeenth finding is without merit.

That finding is to the effect that plaintiff was careless and negligent in making a loan and taking a note, etc., and that the carelessness and negligence of the plaintiff was the proximate and immediate cause of all the loss, etc.

We are of opinion the evidence supports the findings; that the findings cover all the essential issues in the case, and that the conclusions of law and the judgment are correct.

It follows that the judgment and order appealed from should be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.