[Civ. No. 576.   First Appellate District.—July 28, 1909.]

M. ISABEL WYCKOFF, Administratrix of the Estate of CYRUS N. WYCKOFF, Deceased, Respondent, v. PAJARO VALLEY CONSOLIDATED RAILROAD COMPANY, Appellant.

Appeal—Review of Order Denying New Trial—Bill of Exceptions —Presumption.—Where it appears from the record on appeal from an order denying a new trial that a bill of exceptions was settled and allowed before the hearing of the motion, and that it was prepared especially to be used thereon, it must be presumed that the usual practice was followed, and that the motion was based upon the bill of exceptions.

Action for Death—Proximate Cause—Negligent Act of Third Person—Defendant not Responsible.—In an action for death of a

railroad engineer against a railroad company whose alleged negligence appears to have had no causal connection with the death, which is shown by the record to have been proximately caused solely by the negligent act of an independent third person, for whose act the railroad company is in no wise responsible, a judgment against it must be reversed.

ID.—SAFE USUAL METHOD OF LOADING FREIGHT AT SWITCH—NEGLIGENT ACT IN BINDING CHAIN ACROSS MAIN TRACK.—Where the usual mode of loading freight-cars at a switch was practically safe and not dangerous to an engineer of a freight train passing on the main track, and it appears that he lost his life solely as the result of the unusual and unanticipated act of one person in binding a chain to a telephone pole, which caused it to extend across the main track, such person is alone responsible for the death, where no neglect of the railroad company had any legal or causal connection therewith.

ID.—DEFENDANT NOT LEGALLY CONNECTED WITH DEATH.—There was no legal connection between the usual mode of handling freight at the switch and the negligence of such person which defendant could not know or anticipate; and where defendant principally handled freight over a short road, and employed section crews continually, there is no legal or causal connection with the death in defendant's failure to employ track-walkers or persons to oversee the loading of freight at the switch, or to keep its roadbed in full repair.

ID.—REFUSAL OF PROPER INSTRUCTION—ASSUMPTION OF RISKS BY DECEASED—PLEADING—EVIDENCE.—Where defendant pleaded the assumption of risk by the deceased, and there was evidence that deceased was employed by defendant for about ten years as a freight engineer, and that he was well acquainted with the method of handling freight at the switch where he met his death, it was prejudicially erroneous to refuse an instruction to the effect that if the deceased knew of defects and risks of danger in the method of loading freight thereat, and remained in such employment thereafter, he assumed such danger and risk, and there can be no recovery for his death.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Daugherty & Lacey, for Appellant.

Lindsay & Netherton, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial.

The action was brought to recover damages for the death of Cyrus N. Wyckoff, which it was alleged was caused by the negligence of the defendant.

The defendant had been engaged for about fifteen years in operating a single-track narrow-gauge steam railroad, running from Watsonville to the town of Spreckels, a distance of about twenty-three miles, and the decedent had been employed by it, at the time of the accident, for about ten years as a locomotive engineer.

For the accommodation of beet-growers the defendant has provided at different places along the line of the railroad twenty sidings or switches; and during the beet season places on these sidings empty cars, into which the farmers load their beets. One of the sidings is known as Gaffey's switch, and it was at this place that the accident happened. Beet-growers in this vicinity load cars with beets in the following manner: The beets are thrown from the ground into nets which are spread over the bed of a wagon. The wagon is then hauled to the siding, alongside of which is a stretch of raised earth called a ''dump,'' the purpose of which is to make the loaded wagon level with the car. At Gaffey's switch, between the main track and the siding, there is a line of loading posts, set about eight feet apart. In order to empty a wagonload of beets into a car, a span of horses is driven in between the siding and the main track and hitched to a tackle (consisting of ropes and blocks) which is attached at one end to a chain, the chain is given a turn around one of the aforesaid posts, and the other end of the tackle is attached to the four corners of a rope net. The team is then started, and the net of beets is drawn over and into the car. Whenever it was desired to place a car opposite a loading post, or to separate cars in order to allow passage between them for a team crossing the siding to get between it and the main track, it was the custom of the farmers to move the cars by hand. The defendant never had anything to do with the loading of the beets into the cars. It simply built the siding, and delivered thereon empty cars, and when they were loaded hauled them

away.  The farmers themselves furnished the loading tackle, and also furnished and set the loading posts.

On the day of the accident all but three of the eleven or twelve beet farmers who used Gaffey's switch had finished loading and shipping, and James Larkin was one of the three. Larkin had loaded at Gaffey's switch from thirty-five to fifty cars of beets each year for eight or nine years.  Some two weeks prior to the day of the accident, Larkin had partially filled a car with beets when, on account of rain, the sugar factory closed down, and the shipment of beets was stopped. A day or two prior to January 22, 1900, Larkin, with two others, was notified that the factory was about to resume operations, and would receive the balance of the beet crops.

On the morning of the accident the defendant sent a train of empty cars from the sugar factory to Gaffey's switch. These cars with the engine completely filled the switch, and shifted the partially loaded car to a point where there was no loading-post.  At eight o'clock that morning, and while this train was waiting on the switch for the train, of which the deceased Wyckoff was engineer, to pass by on the main track, Larkin with his son and a hired man arrived at Gaffey's switch with two wagon-loads of beets.  Larkin desired to load these beets into the half-filled car, opposite to which, as before stated, there was no loading post; but there happened to be a telephone post across the main track, and close enough to be used as a loading post, and Larkin conceived the idea of employing it as such, and proceeded to do so.  He first placed a chain around the telephone post, and then extended it to and under the nearer rail of the main track, and in the middle of that track hitched his ten by eight inch block to this chain, unloaded the wagons, returned to his field for more beets, and forgot to remove the chain and block.  About fifteen minutes later Wyckoff's train came along, the pilot struck the block and tossed it to the left of the track, leaving the chain on the track; the locomotive struck this chain, was thrown from the track, and Wyckoff was instantly killed.

The plaintiff preliminarily objects to the hearing of this appeal upon the merits; that is, the appeal from the order denying defendant's motion for a new trial, upon the ground that there is no bill of exceptions showing what papers were used upon the hearing of that motion.  The bill of exceptions

was filed July 17, 1907, and the motion was denied December 2, 1907. This very question was decided by the supreme court against the contention of plaintiff in the case of *General Conference of Free Baptists* v. *Berkey,* on October 16, 1908. A rehearing in that case has been granted, and it is now again under submission. The rehearing doubtless was granted on account of the importance of the constitutional question involved, and not by reason of any doubt in the mind of the court on the point now under discussion. The bill of exceptions in this case was prepared especially to be used on the motion for a new trial; and it would be extraordinary indeed if, after its elaborate preparation and its settlement and allowance, it was abandoned, and the motion made on some other grounds. We do not, of course, understand that this can be done; and as the record is silent on the subject, we shall assume that the usual practice was followed and that the motion was based on the bill of exceptions.

The accident which caused the death of Wyckoff was due primarily to the negligence of Larkin, an independent third person, for whose act, standing alone, the defendant, it must be conceded, was in no wise liable; but plaintiff claims that certain acts or omissions of the defendant contributed proximately to cause the injury, and that therefore the defendant must be held responsible. Plaintiff insists that the evidence shows that defendant failed to exercise reasonable prudence and care in providing appliances for loading cars, in watching and tending its track to keep it free from obstacles, in the moving of Larkin's partially filled car from the point where it stood when he began loading it to a point away from the loading posts.

A careful reading of the record fails to disclose to us wherein the defendant was remiss or negligent in any of these respects. There is no evidence that the method of loading at the said switch was in any respect improper or dangerous. On the contrary, the record shows that the method was safe and practical. And even if this mode of loading the cars was, as it is claimed in plaintiff's argument, crude and deficient, it is not shown to have any causal connection with Larkin leaving the chain on the track. Larkin on that morning could have waited until Wyckoff's train passed Gaffey's switch, when the partially filled car could have been moved

into position and loaded in the usual mode, or in like manner, without waiting, he could have loaded his beets into one of the empty cars opposite the loading posts, and later in the day have finished loading the half-filled car. In any event, if Larkin had emptied his beets into the half-filled car in the usual and prescribed mode, whether the mode was safe or unsafe, the block and chain would not have been left on the main track, and the accident would not have occurred. There is no legal connection between the method of loading at said switch and Larkin's oversight.

As to track-walkers: This is a short narrow-gauge railroad, extending in length about twenty-three miles, carrying but few passengers, and engaged principally in handling freight. Inasmuch as it employed section crews who were over the road continually, and considering the character and extent of its business, it certainly cannot in reason be said that in failing to employ track-walkers the company was negligent, and that such negligence concurred proximately with the negligence of Larkin in causing the accident. This, too, must have been the view of the trial court, for the jury was instructed that the company had no actual notice of the obstruction, and that it had not been on the track long enough to give the company constructive notice of its presence.

Plaintiff lays great stress on the fact that defendant moved the partly filled car to the extreme south end of the switch and out of position to be loaded in the usual mode. The moving of the car was the natural physical result of filling the switch with the empty cars and the engine, and the switch was thus filled, so it appears, to clear the main track for Wyckoff's train. During the entire period of the operation of this road no obstruction had ever before been seen on the track at Gaffey's switch, no accident had ever happened anywhere on the line, and no farmer—Larkin or anyone else —at this point had ever before resorted to any mode of loading freight other than the prescribed one. We utterly fail to see how, in moving this car, the defendant was guilty of any negligence. It is true that the car, when moved, was standing near a telephone pole; but it also appears that this was not by design, or for the purpose of having the pole used as a loading post. In short, the use to which the tele-

phone pole was put was wholly unwarranted by any act or conduct of an authorized agent of the defendant company.

· The plaintiff suggests that an insufficient number of section-hands were employed to keep the track and roadbed in repair, and that the company should have employed someone to supervise the loading of the beets. This accident was not caused by a defective roadbed or track; and as Larkin was the only person loading beets at Gaffey's switch that morning, and when the general nature and character of the business of the company is remembered, we think it must be concluded that these two points, like those already considered, are too speculative, and that they bear no causal or legal connection with the unfortunate accident. In our judgment, the negligence of Larkin was that of an independent, intervening responsible agency, and was in law the sole proximate cause of the accident.

But even if we assume that the defendant was guilty of negligence, this accident was not one of the probable results of such negligence, and between it and the injury we can perceive no immediate and legal connection.

The case of *Cole* v. *German S. & L. Society*, 124 Fed. 113, 59 C. C. A. 593, [63 L. R. A. 416], seems in point. There a boy who was a stranger to the plaintiff and not in the employ of the defendant, but who had been seen on one occasion prior to the accident endeavoring to operate the elevator, and riding upon it and visiting the boy in charge of it a dozen times, upon his own initiative opened the sliding door of the elevator shaft in order to admit the plaintiff to the elevator. The elevator was at an upper story, in charge of its regular operator. The plaintiff, supposing that the boy who opened the door was in charge of the elevator, stepped into the shaft and fell to the bottom, and was seriously injured. There was no artificial light maintained in the hall, and it was dark and gloomy; there was no lock provided for the door to prevent anyone from opening it from the outside, and the door was permitted at times to stand open from one to ten inches. Upon these facts it was held that while the defendant's omissions constituted negligence, still its negligence was not, and the boy's negligence was, the proximate cause of the injury. The court said: "There is no evidence in this case that any such accident or injury as that from which

plaintiff suffers ever followed the defendant's act of negligence before the plaintiff fell into the well. Not only this, but there is no evidence that the accident and injury to the plaintiff resulted from these acts or omissions, but positive and convincing testimony that they were produced by the wrongful act of another. . . . There is nothing in the evidence to the effect that the defendant's acts or omissions ever had produced, or ever would in the natural sequence of events have produced any such injury; while the proof is plenary that it was the act of a stranger which actually caused it. . . . The independent, voluntary act of the strange boy who opened the door of the elevator, and invited the plaintiff to enter the well, was incapable of anticipation. No one could have foreseen it as the probable consequence of the acts or omissions of the defendant. It broke the chain of causation between the prior negligence of defendant and the injury to plaintiff, insulated the defendant's acts and omissions from the plaintiff's hurt, and imposed upon the boy who willed and committed the act which produced the injury the sole liability for the damages which resulted from it. The acts and omissions of the defendant were too remote to legally contribute to the injury, or impose liability for it. They were not a proximate cause of the accident, and the mischievous and wrongful act of the strange boy was the sole, moving, efficient, proximate cause that produced it."

In *Fredericks* v. *Northern Ry. Co.*, 157 Pa. 103, [27 Atl. 689, 22 L. R. A. 306], cars left standing on a sidetrack were moved by a stranger to the main track, and caused a collision in which a passenger was injured. The court in that case says: "If obstructions are placed by strangers upon the road either through accident or design, the company is not responsible for the consequences (even to a passenger) unless its agents have been remiss in not discovering them. There was no time for the defendant's agents to discover the mischief, and they cannot be charged with negligence in that respect."

In *Latch* v. *Rumner Ry. Co.*, 3 Hurl. & N. 930, cited in the last-mentioned case, the plaintiff claimed that it was negligence on the part of the defendant not to have a person to take care of the points of a siding, who could have prevented

the accident in question, which was caused by a stranger placing a stone under one of the levers; but the court said that the siding had been in the same state for months and no accident had happened, and the defendant was not bound to have a person stationed there to prevent such a thing. (See, also, *Goodlander Mill Co.* v. *Standard Oil Co.,* 63 Fed. 400, [11 C. C. A. 253, 27 L. R. A. 586].)

No negligent act or omission of the company set in operation Larkin's careless and thoughtless act. There was nothing about the company's manner of conducting business at Gaffey's switch from which this accident could have been foreseen and reasonably anticipated, and any possible cause therefor set in motion by the defendant was remote and imperceptible, and the independent, intervening, deplorable, negligent act of Larkin was the sole proximate cause of the accident and resulting injury.

The court refused to give the following instruction or its substance: "If you believe from the evidence that for more than five years immediately preceding the accident in question, the deceased Wyckoff was employed by defendant as a locomotive engineer, and that he passed Gaffey's switch during said time often enough and under such circumstances as to make him familiar with the situation there, and with the methods of loading which were followed there, and with the fact that defendant kept no loading superintendent there, and kept no depot or loading platform, and had no track-walker, and he also knew or should have known the danger and risk to which he was exposed by reason of said facts and such situation, and with full knowledge of said facts and such situation and the said danger and risk to him, he voluntarily elected to continue and did continue in his said employment as locomotive engineer for as long as two years after having become acquainted with said facts, dangers and risks and said situation, then I instruct you that by so continuing in his employment he assumed said danger and risk."

The deceased passed up and down the road from two to four times a day for the ten years he was employed by the defendant, and the method of loading and conditions generally at Gaffey's switch during all this time were substantially the same as at the time of the accident. The defendant pleaded the assumption of risk, and we think under the law

in this state that the instruction should have been given; for if the deceased knew, or had the means of knowledge, of the defects in the mode of conducting the freighting business at Gaffey's switch, and the dangers likely to result from that mode, and voluntarily remained in the employ of the defendant for (as the instruction reads) two years thereafter, then he cannot recover. (*Sanborn* v. *Madera Flume Co.,* 70 Cal. 266, [11 Pac. 710].) The proposed instruction embraced all of the elements of the doctrine of assumption of risk; and there was evidence in the case from which the jury could have concluded that, if the defendant was guilty of negligence in the method of conducting its business at Gaffey's switch, the deceased knew of this method and of the risks resulting therefrom. Hence the refusal to give this instruction was, in our opinion, prejudicial.

Numerous other objections are made to the instructions, but as they may not arise on another trial of the case, we deem it unnecessary to notice them in detail.

The judgment and order are reversed.

Cooper, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied on August 25, 1909, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1909.