[L. A. No. 20464. In Bank. July 30, 1948.]

MARY McEVOY, Appellant, v. AMERICAN POOL CORPORATION (a Corporation) et al., Respondents.

Richard K. Gandy, Robert G. Cockins and Mark E. O'Leary for Appellant.

Reginald I. Bauder and Robert E. Ford for Respondents.

GIBSON, C. J.—A judgment of nonsuit was entered on motion by defendants based upon a stipulation as to the facts which plaintiff proposed to prove.

An automobile in which plaintiff was riding and which was driven by her son Jack McEvoy was struck by a hit-and-run driver and overturned while plaintiff and her son were returning late at night from the home of her daughter. Jack was employed by defendants, and the car which he was driv-

ing contained jars of chemicals belonging to defendants, which broke and poured over plaintiff's body when the collision occurred, causing severe burns and other injuries. The automobile belonged to Jack, and he was not on company business at the time of the accident.

Defendants were engaged in cleaning swimming pools and employed eight or nine service men and a service manager. Jack was employed as a service man. The employees were trained by defendants, and each man was required to service 18 pools twice a week and to respond to emergency calls in the evenings and on Saturdays and Sundays. A service man's equipment consisted of a vacuum cleaner, garden hose, and certain chemicals, some of which were issued in glass gallon jugs. The service man used his own automobile for the transportation of the equipment, and the defendant corporation compensated him for the use of his car. It was necessary to carry 16 to 18 gallons of sodium hypochloride and three or four gallons of aqua ammonia in the car, and no racks or equipment of any kind was furnished for use in transporting the chemicals. Sodium hypochloride emits chlorine gas, is highly unstable, and breaks down while in solution into hydrochloric and hydrochlorous acid. Although defendants knew that the chemicals were highly dangerous, the service men were not warned of this fact except that they were told to be careful not to get any of the chemicals in their eyes.

No instructions were given as to the manner in which the chemicals should be transported, and defendants knew that they were generally carried loosely in the back seat of the car or on the floor. The bottles broke on occasion, and this fact was well known to defendants who "just laughed the matter off as being of no importance." It was also known to defendants that third persons were carried in the cars when they were loaded, and no instructions were ever given to service men that this should not be done, or that they should unload their vehicles before carrying passengers. A new load of chemicals was often placed in the cars at the close of work in the evening in order that the employees might start out immediately from their homes in the morning to service pools. Plaintiff had often ridden with Jack when the vehicle was so loaded, and neither was aware of the dangerous propensities of the chemicals.

Plaintiff contends that the evidence viewed most favorably to her would support a finding that defendants were negli-

gent and that their negligence was the proximate cause of the injuries she received.

The conclusion that certain conduct is negligent involves the finding both of a legal duty to use due care and a breach of such duty by the creation of an unreasonable risk of harm. (*Crane* v. *Smith*, 23 Cal.2d 288, 298 [144 P.2d 356]; *Routh* v. *Quinn*, 20 Cal.2d 488, 491-492 [127 P.2d 1, 149 A.L.R. 215]; *Johnstone* v. *Panama Pacific I. E. Co.*, 187 Cal. 323, 326-327 [202 P. 34].) According to the stipulated facts, defendants had superior knowledge of the inherently dangerous nature of the chemicals furnished to their service men, and knew that the glass jugs in which the chemicals were issued sometimes broke but treated the matter as being of no importance. Jack, however, "was unaware that the stuff was dangerous." Defendants also knew that their employees often carried third persons in the cars which were loaded with the chemicals. They failed to notify their employees of the danger to third persons and made no attempt to provide safe means of transporting the chemicals or to prevent the practice of carrying passengers. Under these circumstances, it cannot be said, as a matter of law, that defendants as reasonable men should not have foreseen an injury to a person in plaintiff's position or that their conduct showed due care.

Defendants argue that even if they were negligent the sole proximate cause of plaintiff's injuries was either the intervening negligence of Jack McEvoy in leaving the chemicals in the car while driving for pleasure, or the intervening negligence of the hit-and-run driver. It is, of course, clear that defendant's negligent act need not be the sole cause of the injury; it is enough that it be a legal cause. (*Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499 [111 P. 534, 139 Am.St.Rep. 134, 31 L.R.A.N.S. 559]; *Herron* v. *Smith Bros., Inc.*, 116 Cal.App. 518 [2 P.2d 1012].)

The following rules from the Restatement of Torts with respect to proximate causation have been approved in California (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872]; *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631, 637 [67 P.2d 678]), and are applicable in the present situation:

Section 447—"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bring-

ing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act.''

Section 449—''If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.''

Section 453, comment (a): ''If the facts are undisputed, it is usually the duty of the court to apply to them any rule which determines the existence or extent of the negligent actor's liability. If, however, the negligent character of the third person's intervening act or the *reasonable foreseeability of its being done* is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.'' (Italics added.)

In the light of the foregoing we cannot say, as a matter of law, that defendants are relieved from liability for negligence by the intervening conduct of their employee or the hit-and-run driver. As we have seen, the jury could have found that defendants owed a duty to persons in plaintiff's situation, and they cannot escape responsibility for their failure to perform that duty merely because of intervening acts the likelihood of which they reasonably should have foreseen.

In regard to Jack's conduct in leaving the chemicals in the car, there was evidence that defendants failed to give him adequate notice of the extremely dangerous character of the liquids and that he was unaware that they were dangerous. The jury could have found that defendants had knowledge that their employees did not remove the glass jars from their cars at night before driving for pleasure and that defendants should have foreseen the likelihood of such conduct on the part of Jack on the night of the accident. As for the intervening negligence of the unknown driver, the jury could have found, in view of the frequency of automobile accidents, that defendants should have foreseen that a third person might cause the type of accident which occurred.

Defendants rely on *Harrison* v. *Harter*, 129 Cal.App. 22 [18 P.2d 436], which they assert is factually similar to the situation presented here. In that case an automobile driven

by Harter negligently collided with a truck operated by Harrison, who suffered severe burns as the result of an explosion of an extra can of gasoline carried on the truck. Harter contended that he should be relieved of responsibility for his negligence since the immediate cause of Harrison's injuries was the explosion of the can of gasoline. There was evidence that the can was securely fastened on the truck, and the court held that the implied finding that Harrison was not guilty of contributory negligence was supported by the evidence. The court did not discuss or consider the problem presented here, and the decision does not support defendants' position.

The other cases upon which defendants rely involve facts which differ widely from those present here, and are distinguishable on the ground that the intervening acts were held to be of such a nature that they could not reasonably have been anticipated and that they broke the chain of causation. (See *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Marovich* v. *Central California T. Co.*, 191 Cal. 295 [216 P. 595]; *Oakland Bank of Savings* v. *Murfey,* 68 Cal. 455 [9 P. 843]; *Newman* v. *Steuernagel,* 132 Cal.App. 417 [22 P.2d 780]; *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal.App. 55 [183 P. 280]; *Catlin* v. *Union Oil Co.*, 31 Cal.App. 597 [161 P. 29]; *Wyckoff* v. *Pajaro Valley etc. R. R. Co.*, 11 Cal.App. 106 [103 P. 1100].)

The stipulated facts on the issues of negligence and causation present questions which should have been submitted to the jury, and it was error to grant a nonsuit.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.