[Civ. No. 15102. First Dist., Div. Two. June 24, 1955.]

REID AND SIBELL, INC. (a Corporation) et al., Respondents, v. GILMORE AND EDWARDS COMPANY, INC. (a Corporation), Appellant.

62

Edward J. Rice, Henry J. Kleefisch and Dana, Bledsoe & Smith for Appellant.

McKinstry, Haber & Coombes and Lillick, Geary, Olson, Adams & Charles for Respondents.

THE COURT.—This is an action for the value of property lost when a fire, not originated through any act or omission of the defendant, allegedly was caused by its negligence to spread to the premises occupied by a plaintiff.

There are two plaintiffs. Reid and Sibell, Inc. (hereinafter called Reid) was the owner of the goods destroyed. United States Fire Insurance Company (hereinafter called insurer) insured a portion of Reid's property against loss by fire, paid the value of the property covered, and sues as subrogee for the amount paid. Reid sues for losses not covered by its policy.

Defendant Gilmore and Edwards Company, Inc. (hereinafter called Gilmore) was a tenant of the basement and first floor of the building at 1414 Van Ness Avenue, San Francisco. Reid occupied the second floor of this two-story building. Originally, the owner of the building and another tenant of the first floor and basement were joined as defendants, but nonsuit was granted as to them because they did not store any of the paint thinner which assertedly caused the spread of the fire.

The complaint contains two causes of action for each plaintiff. One is based on general negligence in the storing of large quantities of paint thinner. The other counts upon a section of the Fire Code of the city and county of San Francisco which provides:

"Before any benzine, gasoline, or any product of petroleum or any hydrocarbon liquid that will flash or emit an inflammable vapor below a temperature of one hundred and ten (110) degrees Fahrenheit, shall be stored in, upon or about any premises in excess of five (5) gallons application for permit must be made to the Fire Marshal. Said permit will be granted by said officer, except where in the judgment of said officer, the use by the applicant in the manner proposed by him would endanger the safety of life and property." The complaint alleges violation of this ordinance in that the stored paint thinner was a hydrocarbon liquid of a flash point below 110 degrees. Admittedly, Gilmore never applied for a permit.

Both counts allege that because of the presence of the paint thinner, the fire spread from the portion of the building occupied by Gilmore to that occupied by Reid, causing the losses of Reid and insurer.

Jury verdict was for both plaintiffs. Defendant Gilmore appeals from judgment upon that verdict.

Appellant contends that the evidence is insufficient to support the verdict. In this situation, our function is not to weigh the evidence, but only to determine "whether or not there is any substantial evidence which will support" the

verdict. (*Guardianship of Kentera,* 41 Cal.2d 639, 645 [262 P.2d 317].)

The fire occurred Saturday, May 15, 1948. All the businesses occupying the building were closed that day. A janitor working on the first floor smelled smoke, found that it came from the basement, and notified the fire department. The first battalion chief to arrive (this became a four-alarm fire) found a "very hot fire" on the basement floor. Because it appeared to be a volatile liquid burning, fog stream was used by the firemen.

The fire was brought under control and was nearly extinguished at least three times, but on each occasion was reignited by vapors of liquid on the floor. Each time the fire again ignited, "just in split seconds the entire floor of the basement was a mass of flame."

An employee of appellant told the fire chief that a number of drums of inflammable solvent or paint thinner were in the basement, and he warned the chief to wet it down. Firemen saw a number of 50-gallon drums ruptured and leaking liquid. Six to eight of the large drums, all broken, were removed by the fire department. Additionally, about 30 five-gallon containers and 60 to 80 one-gallon containers also were removed.

Appellant argues at length that only nine 50-gallon drums of thinner were stored in the basement, and that all these were removed, unbroken, on Monday following the fire. There is no question that nine drums were removed Monday, but there is substantial evidence that a much larger number of drums were there at the time of the fire, had been burst by the heat, and deposited inflammable liquid on the floor. The evidence permits the conclusion that 750 to 1,000 gallons of highly inflammable paint thinner was stored in the basement on the day of the fire.

There is much testimony of firemen that the burning of this volatile liquid contributed strongly to the spread of the fire. The presence of this inflammable substance, and the danger of explosion of the liquid confined in the drums, made the basement too hazardous for the continued presence of firemen, thus minimizing the possibility of extinguishing the fire.

The building had been used as a garage for some years, and oil had soaked into its wooden floors.

The evidence is ample to warrant the conclusion that the large quantity of paint thinner kept in the basement by

Gilmore substantially increased the difficulty of fighting the fire; caused it to flare up again and again after being under control; and caused it to spread. Clearly there was evidence to warrant the inference that the presence of the thinner directly and proximately contributed to the destruction of Reid's goods on the second floor. Whether that inference is to be drawn is for the jury to determine. (*Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497 [259 P.2d 1010].)

Gilmore argues, however, that it cannot be held liable for merely contributing to the spread of a fire not caused, in the first instance, by its act or omission. It is true that the presence of the paint thinner would have caused no harm had there been no fire. There is no suggestion that Gilmore was in any way responsible for the starting of the fire.

■ However, "It is not necessary that appellant's negligence be the sole proximate cause of respondents' injuries, but it is sufficient that it be one of the contributing causes thereof." (*Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 419 [218 P.2d 17]; see also *Champion* v. *Bennetts,* 37 Cal.2d 815, 821 [236 P.2d 155].)

Obviously, the storage of materials which are highly inflammable but not self-igniting will cause harm only upon the occurrence of a fire. ■ But "(t)he happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability, cannot relieve him from liability." (Rest., Torts, § 449, comment a.) This rule is recognized and applied in California. (*McEvoy* v. *American Pool Corp.,* 32 Cal.2d 295, 299 [195 P.2d 783]; *Hession* v. *City & County of San Francisco,* 122 Cal.App.2d 592, 603 [265 P.2d 542].) Just as in *McEvoy* v. *American Pool Corp., supra,* harm to a passenger from chemicals carried in a vehicle was foreseeable in the event the vehicle was involved in a collision, so was the spread of fire by the paint thinner foreseeable here.

Of course, Gilmore is liable only if its negligence in storing the thinner was a proximate cause of Reid's loss. But this issue was submitted to the jury on full and proper instructions, and was decided against Gilmore.

There remain the questions whether the storage was negligent as creating an unreasonable risk to the other occupant of the building, and whether Gilmore was under a duty to Reid to avoid creating such risk.

We find no California decision directly in point. ■ The

general rule is stated as follows: "A possessor of land is required to make reasonable use of his premises which causes no unreasonable harm to those in the vicinity, either by reason of the character of the use itself or because of the manner in which it is conducted." (Prosser on Torts, p. 601.)

■ The test of permissible use of one's own land is: "was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also public policy." (1 Am.Jur. 506.)

In *Vowinckel* v. *N. Clark & Sons*, 216 Cal. 156 [13 P.2d 733], operation of kilns and furnaces was ordered enjoined as a nuisance, in part because they were an extraordinary fire hazard. The court said, at page 164: " 'A person may not use his own property, even in and about a business in itself lawful, if it be used in such a manner as to seriously interfere with another in the enjoyment of his right in the use of his property.' "

This decision, dealing with abatement of a nuisance, is not directly in point here. But the theories of nuisance, ultrahazardous activity and negligence are closely related as they apply to the right of a user of real property to be free from unreasonable invasion of, or unreasonable risk to, his use and enjoyment of his property. The corresponding duty is to refrain from causing such invasion or risk.

There seems no sound reason to restrict this right and its corresponding duty to acts which contribute to the origin of a fire, as distinguished from its spread. In other jurisdictions, the rule, particularly in the later cases, appears to follow the view that one is liable for acts or omissions which cause the spread of fire of whatever origin.

"(I)f the owner of premises allows them to remain in such a condition as to constitute a danger to other property in case of fire, this negligence will make him liable for damages done to such other property by an accidental fire starting on his premises, although he has no connection with its origin." (22 Am.Jur. 603, and cases cited therein.)

While the cases cited for this statement do not specifically involve the storage of inflammables in good containers for normal business use, they do indicate a definite trend of decision. In any event, they make clear that starting of the fire by some agency other than the defendant does not exempt him from liability.

Two decisions seem particularly applicable here. In *Anderson* v. *Miller*, 96 Tenn. 35 [33 S.W. 615, 31 L.R.A. 604, 54 Am.St.Rep. 812], a lessee was held liable to the owner for loss by fire of a house in which defendant lessee had stored cotton. The fire originated on a neighbor's land. In *Standard Oil Co. of N. J.* v. *Midgett*, 116 F.2d 562, the oil company was held liable for spread to plaintiff's premises of a fire which originated in the warehouse of the company. The court pointed out that gasoline and oil had been spilled upon the wooden floor of the warehouse, and that it was not safe for the storage of oil and gasoline even in sealed drums and containers.

Upon general rules of liability for negligence, we are satisfied that the rule that "the reasonableness of the use of land by an adjoining landowner must be determined according to the circumstances of each case" (1 Am.Jur., 1954 Supp., p. 53), is applicable to creation of unreasonable fire risks.

Here Gilmore stored large quantities of highly inflammable liquids in the basement of the building, separated from the Reid premises only by wooden floors which had become oil-soaked in a period of use of the building as a garage.

Certainly we cannot say that, as a matter of law, Gilmore was not negligent. Damage to Reid was reasonably foreseeable, and it was for the jury, under proper instructions, to determine whether Gilmore was, under all the circumstances, negligent.

We emphasize that this conclusion is not based upon any theory of absolute liability. Rather, it is grounded wholly in the theory of negligence. We hold that the facts pleaded and proved raised a question for the jury as to whether Gilmore's conduct in storing and handling the paint thinner, under all the circumstances of this case, constituted due care.

Appellant Gilmore urges that it was under no duty to discover the dangerous characteristics of the paint thinner. But here it had actual knowledge. Its employees testified that the drums were marked with red labels bearing the word "inflammable." It was an employee of Gilmore who warned the firemen of the danger from the paint thinner.

Gilmore also contends that insurer is estopped to assert any claim. Insurer covered both Gilmore and Reid against loss of their own goods by fire. The Gilmore policy contained the usual exclusion of liability "unless otherwise

provided," "while the hazard be materially increased by any means within the control of the insured" or while specified explosives and inflammables, above a fixed quantity, were on the premises. A "permits and privileges" endorsement was added to the policy. It read "Anything in the printed conditions of the policy to the contrary notwithstanding permission is hereby granted . . . (e) to maintain present and increased hazards; . . . (i) . . . to keep and use all articles or materials usual and/or incidental to said business in such quantities as the exigencies of the business require . . ."

Gilmore argues that insurer, by this endorsement, had given "consent, acquiescence and approval" to the storage of the paint thinner and thus, if the storage were negligent, had become "a joint tortfeasor" and is estopped.

The contention is without merit. The endorsement does no more than provide that the "permitted" acts will not exclude liability of the insurer to Gilmore on the Gilmore policy. Insurer recognized this meaning of the clause by paying the damage caused to Gilmore's goods in the same fire. The policy does not cover liability of Gilmore to third parties.

Appellant Gilmore asserts error in the opening instruction. This instruction, stating in very general terms the contentions of the parties, said that the charge of negligence was based on the claim that appellant "stored excessive quantities of inflammable substance in the basement." Gilmore points out that the complaint referred only to "large quantities of paint thinner." But the specific instructions later given dealt with paint thinner in detail. On the instructions as a whole, we do not believe that the jury was led to think that the issues were broadened by this opening summary of the issues in the instruction.

In any case, the rule is clear that instructions are not restricted to the pleadings, but are to cover matters developed by the evidence although not disclosed by the pleadings. (Code Civ. Proc., § 607a; *Blanton* v. *Curry*, 36 Cal.App.2d 575 [98 P.2d 221].) Similarly, where a case is tried upon the theory that the pleadings were sufficient to raise certain issues, and no objection to evidence upon those issues was made at trial, the point that they are outside the pleadings cannot be raised for the first time on appeal (see cases cited in 24 Cal.Jur. 981). Here the opening statement of respondents referred, without objection, to "inflammable goods" and "inflammable liquids" other than paint thinner,

and appellant's opening statement referred to "inflammable substances, whatever they were." Witnesses were questioned, without objection, as to thinner "or other inflammable substance," and appellant's motions for nonsuit referred to thinner "or other inflammable substance." In the light of this conduct at trial, the present objection to the innocuous reference in the court's preface to its instructions is not reversible error.

Gilmore's other objections to instructions, save for those dealing with the ordinance, have been carefully reviewed and found to be without substance.

The jury was fully instructed upon the ordinance (Fire Code, § 144, quoted above) and upon the effect of its violation, if found by the jury. Gilmore attacks these instructions, contending that the ordinance should not have been considered by the jury.

First, it is contended that the ordinance is invalid because contrary to provisions of the city and county charter which require that the subject of the ordinance shall be expressed in its title. The argument is that the title fails to mention "hydrocarbon liquids."

But the title makes amply clear that the provisions of the Fire Code cover generally substances of this type. The rule cannot be carried to the absurdity of making the title as long as the Fire Code itself. (*Tarpey* v. *McClure,* 190 Cal. 593, 598 [213 P. 983].) Under the rule of that decision and of *Keech* v. *Joplin,* 157 Cal. 1, 8 [106 P. 222], the title of this ordinance is sufficient.

Gilmore also urges that the phrase "hydrocarbon liquid" has no established or definite meaning, and that therefore the ordinance is invalid because too vague and uncertain to be enforced.

"Hydrocarbon" is "A chemical compound of hydrogen and carbon" (The Oxford English Dictionary, corrected re-issue 1933). Webster's New International Dictionary (2d ed.) defines hydrocarbon as "Chem. A compound containing only hydrogen and carbon." The reference to "compound" is to the term as used in chemistry. Thus the word "only" refers merely to the technical term "compound," which in chemistry describes a particular union of elements, constant and unvarying in composition.

In the phrase "hydrocarbon liquid" the word "hydrocarbon" clearly, if ungrammatically, is used as an adjective.

The phrase obviously describes liquids whose distinguishing characteristic is their hydrocarbon content.

Qualified chemists testified that a hydrocarbon is a chemical compound of hydrogen and carbon, and that only if another element chemically combines with those elements does the compound cease to be a hydrocarbon. The paint thinners involved in this case were liquids each containing more than 50 per cent hydrocarbons. The other contents were physically mixed, but not chemically combined, with the hydrocarbons.

Appellant Gilmore urges that a liquid containing anything except hydrocarbons cannot be a "hydrocarbon liquid." But this stilted view cannot be sustained. A liquid whose distinguishing characteristic is hydrocarbon clearly, in any normal use of language, is a "hydrocarbon liquid." Where more than 50 per cent of its content is hydrocarbon, with the remainder consisting of several substances, each a much lesser fraction of the whole, its identification as hydrocarbon liquid is in no way vague, uncertain or indefinite.

If appellant's argument were accepted, normal usage would have neither place nor meaning in the statutes. "Alcoholic beverage" would apply only to a liquid which is 100 per cent (200 proof) alcohol. The "additives" now common in gasoline would take that motor fuel outside appellant's definition of gasoline. "Water" would refer only to a chemical compound of hydrogen and oxygen, and the mineral and other substances in the liquid delivered from our household faucets would cause it to cease to be "water." We cannot accept this view.

"To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited." (*People* v. *Smith,* 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039].)

"A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." (*County of Tulare* v. *City of Dinuba,* 188 Cal. 664, 677 [206 P. 983].) See also *People* v. *Deibert,* 117 Cal. App.2d 410 [256 P.2d 355]; *Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701]; *People* v. *Darby,* 114 Cal.App.2d 412 [250 P.2d 743].)

Some of the decisions suggest that the test of statutory certainty is that the language be sufficient to enable those persons affected by it to understand its applicability to them. (For general discussion of the test of certainty see 41 Cal.

L.Rev. 523.) Under this rule, the Fire Code provision is even more clearly proof against the claim of uncertainty. The section applies to "benzine, gasoline, or any product of petroleum or any hydrocarbon liquid that will flash below a temperature of . . . 110 degrees Fahrenheit." The evidence is that each of the paint thinners here involved was composed in substantial part of petroleum derivatives, that each had a flash point of 40 degrees Fahrenheit, that each drum was marked with a red label "inflammable," and that Gilmore's employees knew their dangerous propensities and, at the fire, warned firemen of their presence in the basement. Also, these thinners were kept in and handled by the paint department of this established supply firm. The experienced operators and employees of that department cannot be expected to be ignorant of the composition and characteristics of the products they dealt with daily.

The ordinance section here involved is not void for vagueness or uncertainty.

There is the further question whether Reid is within the class to which a duty was owed under the ordinance. (*Satterlee* v. *Orange Glenn Sch. Dist.*, 29 Cal.2d 581 [177 P.2d 279] ; *Hagen* v. *Laursen*, 121 Cal.App.2d 379 [263 P.2d 489].)

Here there can be no question that the Fire Code was designed to prevent the spread of fire. It specifies its purpose to protect persons and property. It is implicit that it was designed to limit fire losses by protecting those to whose property any given fire might spread. Reid was within this protected class. (*Alechoff* v. *Los Angeles Gas & Elec. Corp.*, 84 Cal.App 33 [257 P. 569].)

The fact that the ordinance did not flatly prohibit storage of inflammable liquids, but rather required a permit therefor, does not relieve Gilmore from liability. Where the purpose of requiring a permit is to protect against the event which has caused loss, violation of the ordinance constitutes negligence. (*Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663 [98 P. 1063, 16 Ann.Cas. 1061] ; *Beauvais* v. *Springfield Institute for Sav.*, 303 Mass. 136 [20 N.E.2d 957, 124 A.L.R. 611] ; *Hudson* v. *Craft*, 33 Cal.2d 654 [204 P.2d 1, 7 A.L.R.2d 696].)

There is the further question whether violation of the ordinance was a proximate cause of Reid's injury. There are instances where, as a matter of law, the violation cannot be held to be a proximate cause. (*Moon* v. *Payne*, 97 Cal.App.2d 717 [218 P.2d 550] ; *Green* v. *Menveg Properties, Inc.*, 126

Cal.App.2d 1 [271 P.2d 544].) However, those were cases where prevention of the injury sued upon was not at all within the purview of the ordinance, and no possible causal connection existed between ordinance violation and injury.

Here the obvious purpose of the ordinance was to minimize the danger of spread of fire. Thus the issue of proximate cause was for the jury. Whether or not a violation of a statute or ordinance proximately contributed to an accident is a question of fact. (*Scalf* v. *Eicher*, 11 Cal.App.2d 44, 54 [53 P.2d 368] ; *Satterlee* v. *Orange Glenn Sch. Dist., supra*, 29 Cal.2d 581, 590.)

Here the jury was fully and fairly instructed upon the issue of proximate cause, with particular reference to the ordinance. Its verdict cannot be disturbed upon appeal.

Gilmore asserts error in the admission of the ordinance in evidence. A court does not take judicial notice of a municipal ordinance. (*Marysville Woolen Mills* v. *Smith*, 178 Cal. 786, 791 [175 P. 13].) Thus it is proper and necessary that it be admitted in evidence. (*Eigner* v. *Race*, 54 Cal.App. 2d 506 [129 P.2d 444].) Of course, the construction of the ordinance is for the court, and not the jury. Here the jury was fully and correctly instructed as to the construction and effect of the ordinance.

Appellant's assignments of error in the admission of evidence have been reviewed in detail. We find no substance in any of them.

The judgment is affirmed.

A petition for a rehearing was denied July 22, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 17, 1955.